18958

Cecil D. CLAY, Felix C. Davis, Miner W. Crosby, Charles R. Webb, Albert W. Hudson and R. Woody Rogers, Petitioners, v. O. Frank THORNTON, Secretary of State of South Carolina, Robert W. Turner, Pete B. Adams, Ben T. Austin, III, W. Earl Beard, Sr., W. W. Taylor, Jr., Eugene R. Ott, and John E. Moon, Respondents.

(169 S. E. (2d) 617)

*Messrs. Gedney M. Howe, Jr.,* and *Sinkler, Gibbs & Simons,* of Charleston, *for Petitioners,*

*Messrs. Hans F. Paul,* and *James E. Gonzales,* of Charleston, and *Berry, Lightsey, Gibbes & Bowers,* of Columbia, *for Respondents, other than O. Frank Thornton,*

*Messrs. Daniel R. McLeod, Attorney General,* and *C. Tolbert Goolsby, Jr., Assistant Attorney General,* of Columbia, *for Respondent, O. Frank Thornton,*

Sept. 3, 1969.

LEWIS, Justice.

The question to be decided is whether the provision of Section 47-353 of the 1962 Code of Laws, which permits a proposed city or town of over 5,000 inhabitants to be incorporated upon the consent of only a "majority of those voting" in an election held for such purpose, is unconstitutional as conflicting with the provisions of Article 8, Section 2, of the Constitution of this State, which prohibits the organization of any city or town "without the consent of the majority of the electors residing and entitled by law to vote within the district proposed to be incorporated."

The consent necessary for the incorporation of a proposed city or town in this State is governed by the requirements of Article 8, Section 2, of the Constitution, which states that "no city or town shall be organized without the consent of the majority of the electors residing and entitled by law to vote within the district proposed to be incorporated; such consent to be ascertained in the manner and under such regulations as may be prescribed by law."

The foregoing constitutional provision was implemented by the Legislature, with reference to the incorporation of proposed cities and towns containing more than 5,000 inhabitants, by the adoption of Section 47-351 *et seq.* of the 1962 Code of Laws. Under these statutes, the consent of the electors to incorporation must be obtained in an election held for such purpose. However, instead of using the language of the Constitution with reference to the consent necessary to incorporate an area, Section 47-353 permits the issue of incorporation to be determined by "a majority of those voting in such election." When a majority of those so voting

favor incorporation and such result is certified to the Secretary of State, he is required to issue a certificate of incorporation to the proposed city.

Therefore, while Article 8, Section 2, requires the "consent of the majority of the electors residing and entitled by law to vote within the district proposed to be incorporated," Section 47-353 permits the question of incorporation to be determined by only "a majority of those voting in such election." It is this apparent conflict between the Constitution and the statute which must be resolved.

The question at issue arises out of an attempt to incorporate an area designated as North Charleston, located north of the present City of Charleston, South Carolina, and containing in excess of 94,000 inhabitants. An election was held on June 17, 1969 in the proposed area, in accordance with the statutes, to determine whether it would be incorporated and to name a mayor and aldermen of the proposed city. There are approximately 16,900 electors residing and entitled by law to vote within the area proposed to be incorporated. Of the qualified electors, 7,315 cast ballots in the election with a majority (4,572) of these voting in favor of incorporation. Therefore, it is apparent that, while a majority of those voting voted favorably, a majority of the 16,900 qualified electors in the area did not cast ballots in favor of incorporation.

Since a majority of those voting in the election voted in favor of incorporation, as required by Section 47-353, the results were certified to the Secretary of State for the issuance of a certificate of incorporation. This action was then brought by the petitioners, as electors and taxpayers in the area proposed to be incorporated, against the respondents, the Secretary of State and those elected mayor and aldermen of the proposed city, to enjoin the Secretary of State from issuing the certificate and the mayor and aldermen from taking office, upon the ground that Section 47-353, under which incorporation was attempted is unconstitutional as conflicting

with Article 8, Section 2, of the Constitution. A temporary restraining order was granted so enjoining the respondents, and a rule issued requiring them to show cause why the temporary restraining order should not be made permanent. The Secretary of State, through the Attorney General, has filed a brief upholding the position of petitioners. The respondents, mayor and aldermen of the proposed city, appear in opposition. We assumed original jurisdiction because of the immediate public interest involved.

In determining whether a "majority of those voting" in the election satisfies the constitutional requirement that incorporation cannot be accomplished "without the consent of the majority of the electors residing and entitled by law to vote within the district proposed to be incorporated," it is elementary that the constitutional provision must be given controlling effect. If the statutory provision in question does not satisfy the constitutional requirement, the statute is to such extent unconstitutional and the attempt to incorporate the North Charleston area is of no legal effect.

We find the language of Article 8, Section 2, clear, plain, and unambiguous. It requires that a majority of the qualified electors in the area to be incorporated must consent to incorporation, but leaves to the Legislature the right to prescribe how "such consent" of the designated majority is to be ascertained. The constitutional provision does not require an election to ascertain consent, and the Legislature might have just as properly provided for consent to be ascertained through a petition. If the petition method had been adopted, certainly it could not be validly contended that the constitutional requirement could be met by a petition containing the approval of less than a majority of all of the qualified electors in the area. By not specifically designating the method of ascertaining consent and leaving this for legislative determination, the intent was clearly evidenced that, under whatever method adopted, the actual consent of a majority of the electors in the area must be ob-

tained to incorporate a town or city. The meaning of the constitutional mandate does not vary according to the method adopted by the Legislature to implement it.

The argument of the respondents, who attempt to uphold the constitutionality of Section 47-353, concedes, in effect, that the Constitution requires the consent of more than a mere majority of those voting in the election. They contend, however, that the constitutional majority has been obtained in this case since, under the principle stated in *Cass County v. Johnston,* 95 U. S. 360, 24 L. Ed. 416, and applied in *Paris Mountain Water Company v. City of Greenville,* 110 S. C. 36, 96 S. E. 545, "all qualified voters who absent themselves from an election duly called are presumed to assent to the expressed will of the majority of those voting."

We need not pursue the rationale of the principle stated in the *Cass County* case and assume its applicability where the controlling law requires the requisite consent to incorporation to be determined by an election. The principle has no application, however, where, as in this case, the *actual* consent of the designated majority is required regardless of the method used to ascertain it.

While the question was not directly in issue, the construction which we have placed on Article 8, Section 2, has been approved in at least two prior decisions of this court in construing other provisions of the Constitution. *Paris Mountain Water Co. v. City of Greenville, supra,* 110 S. C. 36, 96 S. E. 545; *Whitmire v. Cass,* 213 S. C. 230, 49 S. E. (2d) 1.

In *Paris Mountain Water Company,* the Court stated:

"We find no provision in the Constitution which prescribes that a majority of all the electors, those voting and those not voting, shall be necessary to carry an election by the people *save in one instance, and that refers to an election to determine if a town shall be incorporated Article 8, Section 2.*" (Emphasis added.)

In determining whether Article 8, Section 2, applied to the annexation of areas to a municipality, the Court stated in *Whitmire:*

"Should the quoted provision of the constitution (Article 8, Section 2) be held applicable and controlling here, then it would necessarily follow that the annexation election failed to carry, because it is evident * * * that a majority of all the qualified electors * * * those voting and those not voting, did not vote for annexation."

Finally, it is argued that the requirement of Article ■ 8, Section 2, of the South Carolina Constitution, results in a denial to the majority of those voting in the election in favor of incorporation, where such majority is less than a majority of all qualified electors, of the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. Apparently, the contention is that equal protection is denied because the requirements of Article 8, Section 2, deprive the majority, who have voted favorably in the election, of the presumption that all who absented themselves from the election are deemed to assent to the expressed will of the majority of those voting —in other words, the failure to indulge such presumption makes the vote of each member of the majority voting in favor of incorporation less effectual. The respondents reason that the effect of Article 8, Section 2, is to add the "non-votes to the negative votes cast," if the foregoing presumption is not indulged, thereby diluting the votes of those persons voting for incorporation.

The foregoing argument is based upon the principles announced by the United States Supreme Court in the recent reapportionment cases, citing *Reynolds v. Sims,* 377 U. S. 533, 84 S. Ct. 1362, 12 L. Ed. (2d) 506, among others. These principles have no application here.

As previously pointed out, Article 8, Section 2, does not require an election. It is simply the exercise by the State of South Carolina of its right to prescribe the requirements for

incorporation of municipalities. Under its provisions, a majorty of those expressing themselves favorably on the question of incorporation, if less than a majority of all qualified electors, cannot require that an area be incorporated as a town or city. The present argument is, in effect, not that those favoring incorporation are deprived of equal protection, but rather that their votes are not given the effect of overriding the clear constitutional requirement for incorporation of municipalities. Such result cannot be accomplished under the guise of equal protection.

Therefore, regardless of the method adopted to ascertain consent to the incorporation of a town or city, we hold that Article 8, Section 2, of the South Carolina Constitution requires the actual consent of a majority of all qualified electors in the area proposed to be incorporated. To the extent that Section 47-353 permits incorporation upon the actual consent of less than a "majority of the electors residing and entitled by law to vote within the district proposed to be incorporated," it is hereby declared to be unconstitutional. Since the consent of the required majority was not obtained in the election held in this case, the attempt to incorporate the North Charleston area is null, void, and of no legal effect.

The temporary restraining order heretofore granted is accordingly made permanent.

Petition granted.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.