14

Rockingham,
No. 6103.

ROBERT TIEWS, JR.

*v.*

TIMBERLANE REGIONAL SCHOOL DISTRICT *& a.*

January 29, 1971.

*McLane, Carleton, Graf, Greene & Brown* and *Jack B. Middleton* ( *Mr. Middleton* orally ), for the plaintiff.

*Soule & Leslie* for the defendant Timberlane Regional School District, filed no brief.

*Warren B. Rudman*, Attorney General and *Richard A. Hampe*, Assistant Attorney General ( *Mr. Hampe* orally ), for the defendants Attorney General and Secretary of State.

KENISON, C.J. The single issue presented in this case is the constitutional validity of our bond statute ( RSA 33:8 ( supp. ) as amended by Laws 1969, 438:2 ) insofar as it requires a two-thirds vote for the issuance of municipal bonds. This precise issue has not been decided in this State or by the Supreme Court of the United States although the issue is pending and

has been argued this month in *Lance v. Board of Education*, 153 W. Va. 559, 170 S.E.2d 783, *cert. granted sub nom., Gordon v. Lance*, 397 U.S. 1020, 25 L. Ed. 2d 530, 90 S. Ct. 1264 ( 1970 ). It will be noted that for the most part the cases and legal commentary that have discussed this issue were decided or written in 1969 or 1970.

The plaintiff, a taxpayer of the Timberlane Regional School District, instituted a petition for declaratory judgment ( RSA 491:22 ) against the school district, the Attorney General and the Secretary of State of the State of New Hampshire, requestting a declaration that RSA 33:8 ( supp. ) as amended by Laws 1969, 438:2 is unconstitutional insofar as it requires a two-thirds vote for the issuance of bonds. The parties submitted an agreed case which included an agreed statement of facts. The district, at its annual meeting of March 7, 1970, voted a bond issue for school district purposes at which sixty-three per cent of the voters approved the bond issue and thirty-seven per cent opposed it. It was agreed that all procedural requirements for calling the school district meeting and taking the vote were met and that the bond issue was valid only if the two-thirds requirement was unconstitutional. In pertinent part RSA 33:8 ( supp. ) as amended by Laws 1969, 438:2 reads as follows: "Except as otherwise specifically provided by law, the issue of bonds or notes in excess of twenty thousand dollars by any municipal corporation, except a city, shall be authorized by a vote of two-thirds, and the issue of tax anticipation notes, by a vote of a majority, of all the voters present and voting at an annual or special meeting of such corporation, called for the purpose . . . . " The issue raised by the parties in this proceeding was reserved and transferred by *Perkins*, J.

The plaintiff reasons that the requirement of a two-thirds majority in effect classifies persons according to their vote and gives each person voting against a bond proposition twice the voting power of each person voting for the proposition. He argues that this "weighting" of votes violates the principle of "one man, one vote" and impairs the fundamental right to vote. He concludes that the State of New Hampshire must demonstrate a compelling interest in the extraordinary majority requirement to justify its use. The plaintiff argues, in effect, that absent compelling circumstances municipal bond propositions submitted to the voters must be decided by majority vote. *See*

Comment, California's Debt Restriction: An Unconstitutional Super Majority Voting Requirement?, 43 So. Cal. L. Rev. 455 ( 1970 ).

The plaintiff relies on three cases which have struck down high vote requirements analogous to that in the case at bar. *Westbrook* v. *Mihaly*, 2 Cal. 3d 765, 471 P.2d 487, 87 Cal. Rptr. 839 ( 1970 ); *Lance* v. *Board of Education*, 153 W. Va. 559, 170 S.E.2d 783, *cert. granted sub nom., Gordon* v. *Lance*, 397 U.S. 1020, 25 L. Ed. 2d 530, 90 S. Ct. 1264 ( 1970 ); *Rimarcik* v. *Johansen*, 310 F. Supp. 61 ( D. Minn. 1970 ). Other courts, however, have reached the opposite conclusion. *Bogert* v. *Kinzer*, 93 Idaho 515, 465 P.2d 639 ( 1970 ); *Brenner* v. *School District*, 315 F. Supp. 627 ( W.D. Mo. 1970 ); *Thurston* v. *Greco*, 474 P.2d 881 ( Wash. 1970 ); *see Clay* v. *Thornton*, 253 S.C. 209, 169 S.E.2d 617 ( 1969 ), *appeal dismissed*, 397 U.S. 39, 25 L. Ed. 2d 40, 90 S. Ct. 814 ( 1970 ).

It is now well established that claims under the fourteenth amendment that state laws improperly weight the votes of different classes of persons are justiciable. *Baker* v. *Carr*, 369 U. S. 186, 208-37, 7 L. Ed. 2d 663, 680-97, 82 S. Ct. 691, 705-20 ( 1962 ); *Gray* v. *Sanders*, 372 U.S. 368, 374, 9 L. Ed. 821, 826-27, 83 S. Ct. 801, 805 ( 1963 ); *Reynolds* v. *Sims*, 377 U.S. 533, 554-61, 12 L. Ed. 2d 506, 523-27, 84 S. Ct. 1362, 1377-381 ( 1964 ). The Supreme Court has also made it clear that the prohibitions against weighted voting enunciated in *The Reapportionment Cases* apply to local bond referenda. Once the state gives citizens the right to vote on a matter of public concern it may not discriminate between classes of voters similarly situated. In *Cipriano* v. *City of Houma*, 395 U.S. 701, 704, 23 L. Ed. 2d 647, 650-51, 89 S. Ct. 1897, 1899 ( 1969 ), the Supreme Court applied the equal protection clause to a local referendum for a municipal bond; in *City of Phoenix* v. *Kolodziejski*, 399 U.S. 204, 26 L. Ed. 2d 523, 90 S. Ct. 1990 ( 1970 ), it applied the equal protection clause to referenda for issuance of general obligation bonds.

The heart of plaintiff's claim is that the Supreme Court's reapportionment and voting cases proscribe the " weighting " of votes inherent in an extraordinary majority rule of decision and require that this discrimination be justified by a compelling

state interest. Contrary to the courts of *Westbrook* v. *Mihaly supra*, *Lance* v. *Board of Education supra*, and *Rimarcik* v. *Johansen supra*, we do not believe that the rationale of the voting and apportionment cases applies or should apply to the question at bench. Rather, we conclude that under the due process and equal protection clauses the extraordinary majority requirement is constitutional if it is rationally related to a legitimate state objective. We hold that the two-thirds vote requirement meets this test.

The Supreme Court's voting cases involve state laws that either deprive classes of persons from voting altogether or dilute the effectiveness of their vote. Thus, the Court has held that a state may not exclude from the ballot box those who are too poor to pay poll taxes, *Harper* v. *Virginia State Bd. of Elections*, 383 U.S. 663, 16 L. Ed. 2d 169, 86 S. Ct. 1079 ( 1966 ); members of racial minorities, *Louisiana* v. *United States*, 380 U.S. 145, 13 L. Ed. 2d 709, 85 S. Ct. 817 ( 1965 ); persons who do not own land, *Kramer* v. *Union Free School District No.* 15, 395 U.S. 621, 23 L. Ed. 2d 583, 89 S. Ct. 1886 ( 1969 ); or servicemen, *Carrington* v. *Rash*, 380 U.S. 89, 13 L. Ed. 2d 675, 85 S. Ct. 775 ( 1965 ). Similarly, in *The Reapportionment Cases*, the court has prohibited numerous state districting systems which dilute the effectiveness of a person's vote on the basis of where he lives. *Gray* v. *Sanders*, 372 U.S. 368, 9 L. Ed. 2d 821, 83 S. Ct. 801 ( 1963 ); *Wesberry* v. *Sanders*, 376 U.S. 1, 11 L. Ed. 2d 481, 84 S. Ct. 526 ( 1964 ); *Reynolds* v. *Sims*, 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362 ( 1964 ); *Avery* v. *Midland County*, 390 U.S. 474, 20 L. Ed. 2d 45, 88 S. Ct. 1114 ( 1968 );*Hadley* v. *Junior College District*, 397 U.S. 50, 25 L. Ed. 2d 45, 90 S. Ct. 791 ( 1970 ).

These cases have a unifying characteristic not present in the case at bar. In each of them a state denied certain persons an effective vote on the basis of a classification which was, under the fourteenth amendment, inherently suspect. These cases were based on the assumption that the poor, racial minorities, the landless, members of the armed forces, and all persons irrespective of their geographical place of residence, have an equal right with others to enjoy full exercise of their franchise. They rested on the belief that under the fourteenth amendment classifications between the landed and the landless, and between persons living in different parts of the state or city, are inherently

suspect, and can be justified only under compelling circumstances. *See Reynolds* v. *Sims,* 377 U.S. at 561-63, 12 L. Ed. 2d at 526-28, 84 S. Ct. at 1381-382 (1964); *Kramer* v. *Union Free School District No.* 15, 395 U.S. at 627, 23 L. Ed. 2d at 589-90, 89 S. Ct. at 1889-890.

To bring this case within the rationale of the Supreme Court voting and reapportionment cases, plaintiff would have to establish that the classification drawn in this case, between those who favor and those who oppose the municipal bond, is inherently suspect. Every extraordinary majority requirement classifies voters according to their votes. Thus, plaintiff would have to establish that the equal protection clause implies a requirement of simple majority rule. Note, 83 Harv. L. Rev. 1911, 1921 (1970); *see Brenner* v. *School District,* 315 F. Supp. at 628. Nothing in the Constitution or the cases discussed above says that the class of persons who favor municipal bonds have a right to have their views prevail merely because their votes preponderate numerically over the votes cast by the class of persons opposed to those expenditures. We approve the reasoning of the Idaho Supreme Court in discussing this question: "The Equal Protection Clause has been described by Freund as a moral standard wrapped in a legal command which allows the Court in establishing constitutional doctrine to help shape the nation's thinking about social justice and ethical conduct." "It has been said that the first step in the search for truth is to call things by their right names. So it is with the case at bar. What is urged upon us here has nothing to do with social justice, morality or inequality. It presents a question of governmental theory." *Bogert* v. *Kinzer,* 465 P.2d at 647. As the Supreme Court has stated on numerous occasions, it is not the province of the judicial branch of government to decide among competing theories of government. *See, e.g., Baker* v. *Carr,* 369 U.S. at 223-24, 7 L. Ed. 2d at 689-90, 82 S. Ct. at 713-14.

Plaintiff also argues that the two-thirds requirement impairs the fundamental right to vote, and relies on Supreme Court cases holding that legislation which impairs the enjoyment of fundamental rights must be justified by a compelling state interest. *See, e.g., Harper* v. *Virginia State Board of Elections,* 383 U.S. 663, 670, 16 L. Ed. 2d 169, 174-75, 86 S. Ct. 1079, 1083 (1966); *Cipriano* v. *City of Houma,* 395 U.S. 701, 23

L. Ed. 2d 647, 89 S. Ct. 1897 ( 1969 ). This argument has no merit. Since the equal protection clause does not require that referenda be decided by a simple majority of the voters, the requirement of a two-thirds majority in no sense impairs the full enjoyment of the right to vote.

Most courts and commentators have concluded that extraordinary majority vote requirements do not impair the right to vote. *See Bogert* v. *Kinzer supra; Brenner* v. *School District supra; Clay* v. *Thornton supra; Thurston* v. *Greco supra;* J. McLaughlin, *What has The Supreme Court Taught?*, 72 W. Va. L. Rev. 1 ( 1970 ); Note, 11 B.C. Ind. & Com. L. Rev. 553 (´1970 ); Comment, Extraordinary Majority Voting Requirements, 58 Geo. L.J. 411 ( 1969 ); Note, 83 Harv. L. Rev. 1911 ( 1970 ); Comment, Judicial Activism and Municipal Bonds: Killing Two-Thirds with One Stone?, 56 Va. L. Rev. 295, 330 ( 1970 ).

It does not follow that plaintiff's claim must fail simply because he cannot invoke a strict standard of review. It only follows that this court must rely on the traditional test under the due process and equal protection clauses. To be constitutional, the voting statute in this case must be capable of a rational relation to a legitimate governmental objective. *See McGowan* v. *Maryland*, 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 398-99, 81 S. Ct. 1101, 1105 ( 1961 ); *Brenner* v. *School District*, 315 F. Supp. at 636-37; *Bogert* v. *Kinzer*, 465 P.2d at 649; Note, 83 Harv. L. Rev. 60, 114, 118-23.

The approach we take in this case is analogous to that taken by the Supreme Court in *McDonald* v. *Board of Election*, 394 U.S. 802, 807-08, 22 L. Ed. 2d 739, 744-45, 89 S. Ct. 1404, 1407-408 ( 1969 ). There the petitioner argued that a state statute denying absentee ballots to persons held in jails impaired the fundamental right to vote and was inherently suspect. The Court, per *Warren*, C. J., answered: " Such an exacting approach is not necessary here, however, for two readily apparent reasons. First, the distinctions made by Illinois' absentee provisions are not drawn on the basis of wealth or race. Secondly, there is nothing in the record to indicate that the Illinois statutory scheme has an impact on appellants' ability to exercise the fundamental right to vote . . . . We are then left with the more traditional standards for evaluating appellants' equal protection claims. "

Under the traditional due process and equal protection stand-ard we do not determine whether a statute is wise, or whether it is necessary, but only whether it is rationally related to a legitimate governmental objective. We hold that the two-thirds vote requirement meets this minimum standard. The primary justifications offered for the extraordinary majority rule are that it effectively safeguards against overextending the municipal debt, and that it tends to protect the taxpayers who, in future years, must pay the taxes necessitated by the bonds. Some take the view that the two-thirds majority requirement is no longer a desirable tool for the regulation of municipal bonds. *West-brook* v. *Mihaly*, 2 Cal. 3d 765, 788-96, 471 P.2d 487, 503-09, 87 Cal. Rptr. 839, 855-61 (1970); Comment, Judicial Activism and Municipal Bonds: Killing Two-Thirds with One Stone?, 56 Va. L. Rev. 295, 297-306 (1970). That question, however, is a legislative one.

We hold that the requirement of a two-thirds majority for approval of municipal bonds of over $20,000.00 is rationally related to legitimate governmental objectives. In *Brenner* v. *School District*, 315 F. Supp. at 637-42, the court concluded that the two-thirds vote requirement would even satisfy the re-quirement of a compelling state interest. We conclude, therefore, that RSA 33:8(supp.) as amended by Laws 1969, 438:2 is constitutional. *Bogert* v. *Kinzer*, 465 P.2d at 647, 648-49; *Bren-ner* v. *School District supra*; Note, 83 Harv. L. Rev. 1911, 1918-919, 1923 (1970).

*Petition dismissed.*

GRIFFITH, J., did not sit; the others concurred.