19436

Warren D. BRISBEN et al., Respondents, v. O. Frank THORNTON, Secretary of State of South Carolina, et al., of whom John E. Bourne, et al. are, Appellants.

(189 S. E. (2d) 827)

*Messrs. James E. Gonzales,* and *Samuel H. Altman,* of
North Charleston, *for Appellants,*

526

*Messrs. Robinson, Paul & Belk,* of Charleston Heights, *for Respondents,*

June 6, 1972.

LEWIS, Justice:

Those charged with the duty of conducting a special election to incorporate an area in Charleston County, South Carolina, to be known as the City of North Charleston, certified that a majority had voted in favor of incorporation. This taxpayers' action challenges such certification upon the ground that it was based upon an illegal determination of the number of persons qualified to vote in the election. The facts are not in dispute.

On March 18, 1971, the Secretary of State, pursuant to Section 47-351 *et seq.* of the 1962 Code of Laws, commissioned eight (8) citizens to conduct a special election on the question of the incorporation of an area to be included within the limits of the proposed City of North Charleston. The commissioners thereafter proceeded with plans for the election which was subsequently held on April 27, 1971.

The proposed city consisted substantially of four (4) voting precincts in Charleston County, namely: Morningside, Remount Road, Cameron Terrace, and East North Charleston, comprising an area of 6.5 square miles, with in excess of 5,000 inhabitants.

Article 8, Section 2, of the South Carolina Constitution, provides that "no city or town shall be organized without the consent of the majority of the electors residing and entitled by law to vote within the district proposed to be incorporated."

Under the foregoing constitutional provision, only registered electors actually residing within the limits of the proposed city or town are eligible to vote in an incorporation election. See: *Creamer v. City of Anderson,* 240 S. C. 118, 124 S. E. (2d) 788.

In order to incorporate an area, a simple majority of those voting is insufficient. Instead, a majority of all quali-

fied electors *actually residing* within the proposed area is required. *Clay v. Thornton,* 253 S. C. 209, 169 S. E. (2d) 617.

Among other duties, Code Section 47-352 requires the election commissioners, upon their appointment by the Secretary of State, "(a) to proceed to the proper registration of the electors within the proposed corporate limits of the proposed city."

The commission did not conduct an independent registration of the electors residing within the limits of the proposed city; but, instead, made application to the State Election Commission for lists of the registered electors in the above named precincts which comprised the area to be incorporated.

Under the provisions of Section 23-30 *et seq.,* Supplement to the 1962 Code of Laws, the State Election Commission was created with the power to name an executive director, upon whom the duty was imposed to maintain a complete roster of all *qualified electors* by county and by precincts. The power was also conferred upon the executive director to delete the name of any elector (1) who is deceased, (2) who is no longer qualified to vote in the precinct where currently registered, (3) who has been convicted of a disqualifying crime, or (4) who is otherwise no longer qualified to vote as may be provided by law. These Code sections also provide for notice by mail to each elector whose name has been deleted by the executive director and the reason for such deletion.

In response to the request of the incorporation commission, the executive director of the State Election Commission attempted to bring the registration lists up to date by removing therefrom the names of persons who had died or become disqualified and adding the names of electors who had subsequently registered. In doing so, he deleted the names of 452 persons who had failed to vote in previous elections, as required by Code Section 23-31(C) (3). The

incorporation commission then requested that an additional 801 names be deleted by the director upon the ground that they had moved from the area. Upon processing these names, it was found that 752 were disqualified and they were removed from the lists. Pursuant to Section 23-32, Code Supplement, notices were sent by the State Election Commission to those whose names were deleted. The voter registration lists were then printed on April 16, 1971, ten days before the election, in compliance with Section 23-31 (C)(5), and subsequently furnished to the incorporation commission. These lists contained 5596 registered electors within the area.

Admittedly, the list of registered electors furnished by the State Election Commission, due to a technical error, contained forty-two (42) names which should have been deleted. There were also added to the list the names of individuals who had lawfully registered, but too late to clear the offices of the State Election Commission for inclusion on the list as printed. The incorporation commission determined that others were not eligible to vote and those names were removed from the list. The list of registered voters, as thus corrected, was used in conducting the election on April 27, 1971, although the commission was of the opinion that there were others on the list who were not eligible to vote on the question of incorporation. The lack of time was given as the reason for failure of the commission to further purge the rolls of disqualified voters.

After the election was held, the commission, over a period of about sixteen (16) days, made a thorough investigation into the qualifications of some sixteen to eighteen hundred individuals whose names appeared on the voter registration list but who had not presented themselves to vote. From the information gathered, the commission determined, and it is stipulated to be a fact, that, of the foregoing, 493 were not qualified to vote in the incorporation election for various valid reasons. These names were accordingly stricken from the list of those eligible to vote.

After such deletion, the commission certified that 5167 electors resided and were entitled to vote in the district proposed to be incorporated and that, of these, 2627 voted in favor of incorporation and 1137 in opposition. Since a majority of those certified as eligible to vote cast ballots in favor of incorporation, application was made to the Secretary of State on May 13, 1971 for the issuance of a charter. This action followed and resulted in an order by the lower court restraining the Secretary of State from issuing the charter, upon the ground that the post-election deletion by the commission of 493 names from the voter registration list was without legal authority.

No issue is presented in this appeal as to the legality of any action of the commission prior to, or in the conduct of, the election. It is undisputed that no qualified elector residing in the area to be incorporated was deprived of a right to vote on the question of incorporation, and there is no contention that any person was permitted to vote who was not entitled to do so. The *sole* question concerns the authority of the commission, after the election and before the results were certified, to remove from the list of qualified voters the names of the 493 individuals who, admittedly, were not qualified. If the commission lawfully eliminated these names from the eligible list of voters, incorporation carried and the Secretary of State was required to issue the requested charter. If the commission could not lawfully eliminate these names, then the required majority for incorporation was not obtained and the restraining order by the lower court was properly issued.

The argument that the commission was without authority to eliminate the 493 names from those eligible to vote is based upon the premise that the commission was bound by the voter registration list as prepared by the State Election Commission, which showed 5596 registered electors in the area; and that, in any event, if the commission had the authority to delete unqualified voters from the registration lists, such authority could only be exercised before the date

of the election and not after. There is no merit in the contention, under the facts of this case.

It is apparent that the registration lists compiled by the State Election Commission are based upon the general qualifications for electors as set forth in Article 2, Section 4, of the Constitution and Code Section 23-62; and are not necessarily conclusive of the additional qualifications required for voting in incorporation elections, Article 8, Section 2, *supra*.

While Code Section 23-61 provides that "no person shall be allowed to vote in any election unless he shall be registered as herein required," such registration, because of the special requirements of Article 8, Section 2, would not entitle one to vote in an incorporation election unless he was actually residing in the area to be incorporated at the time of the election. While the decision in *Creamer v. City of Anderson, supra,* 240 S. C. 118, 124 S. E. (2d) 788, involved an annexation election, the eligibility requirements to vote were substantially the same as in an incorporation election. The court there recognized that one may be a qualified elector in the area to be annexed, but disqualified to vote in an annexation election because actually residing elsewhere. The same principle applies to an incorporation election.

The record shows that the voter registration list furnished by the State Election Commission was made up of those electors registered to vote in the area. There is no contention that it certified the list of registered electors as those qualified to vote in the incorporation election, that is, those electors actually residing in the area at the time of the election. The voter registration list furnished by the State Election Commission was, therefore, not conclusive of the number of electors residing and entitled to vote within the district proposed to be incorporated. *Wagener v. Smith,* 221 S. C. 438, 71 S. E. (2d) 1.

An incorporation election is unique in that incorporation cannot result unless a majority of *all* qualified electors *actu-*

*ally residing* within the proposed area vote favorably. In the present election there were some sixteen to eighteen hundred registered electors who had not voted. If the voter registration lists, as furnished by the State Election Commission, were conclusive of those eligible to vote, then all of these on those lists, who did not vote, counted in effect, as opposition votes. Thus unqualified or deceased electors whose names appeared upon the lists, would be counted in opposition, of whom, admittedly, there were 493 among those who did not vote.

Pursuant to its obligation to proceed to the proper registration of electors within the proposed corporate limits, the incorporation commission procured from the State Election Commission a list of the registered electors in the area. While this list showed those who were registered electors, it was not conclusive as to those actually residing within the area at the time of the election. The duty to determine who were registered electors in the area was that of the State Election Commission. The duty to determine who, of the registered electors, possessed the additional qualification of actual residence in the area at the time of the the election was that of the incorporation commission appointed by the Secretary of State.

The incorporation commission has determined that the number of persons qualified to vote in the election was 5167 and that a majority voted in favor of incorporation. There is no charge or evidence of fraud; and the accuracy of the foregoing factual determination by the commission is not in issue. Under these circumstances, the fact that the determination of the actual number eligible to vote was finalized promptly after the election is of no legal consequence.

We therefore conclude that the North Charleston Election Commission properly determined that a majority of those eligible to vote had voted in favor of incorporation of the proposed City of North Charleston, and that the lower

court was in error in restraining the Secretary of State from issuing the requested charter.

The judgment of the lower court is accordingly reversed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.