Thomas E. MELOON

v.

Raymond A. HELGEMOE, Warden, New Hampshire State Prison, and David H. Souter, Attorney General of the State of New Hampshire.

Civ. A. No. 77–11.

United States District Court,
D. New Hampshire.

April 21, 1977.

A male who has sexual intercourse with a female not his wife is guilty of a class A felony if

\* \* \* \* \* \*

. (c) the female is unconscious or less than fifteen years old; . . .

Two constitutional challenges have been mounted:

1. that he was denied equal protection of the laws because the statute discriminates against males; and

2. that the statute on its face and as applied to him deprived him of the substantive right to due process of law guaranteed under the Fourteenth Amendment.

At the outset, I note that this case does not involve forceable rape.

Petitioner's primary constitutional claim is that the statute, on its face and as applied to him, denies him equal protection of the laws because it is directed only at males who have intercourse with females of the age of fifteen or under and, therefore, discriminates against such males. The New Hampshire Supreme Court noted that this "novel" theory had been universally rejected whenever it was advanced. While it is true that the petitioner can point to no cases striking down statutory rape laws, the New Hampshire statute enacted in 1975, which does not differentiate between males and females, is clear proof that this theory is not "novel."

A *person* is guilty of a class B felony . . . if he engages in sexual penetration with a *person* who is thirteen years of age or older and under sixteen years of age. NH RSA 632–A:3. (Emphasis added.)

This statute has been enacted into law in this and other states that have updated the Model Penal Code which was the basis for the 1973 law under which petitioner was convicted.

In an equal protection analysis, the first inquiry to be made is whether there is, in fact, any discrimination or unequal treatment of the sexes. In *Geduldig v. Aiello,* 417 U.S. 484, 496–497, 94 S.Ct. 2485, 2492, 41 L.Ed.2d 256 (1974), the United States

Eleanor S. Krasnow, Manchester, N. H., for plaintiff.

Peter W. Heed, Concord, N. H., for defendants.

## OPINION

BOWNES, District Judge.

This petition for writ of habeas corpus attacks the constitutionality of NH RSA 632:1 I(c) (1971) (superseded by NH RSA 632–A:3 (1975)), pursuant to which petitioner was convicted of having sexual intercourse with a female not his wife and under fifteen years of age.

Supreme Court said there is no discrimination where

> [t]here is no risk from which men are protected and women are not. Likewise, there is no risk from which women are protected and men are not.

*See also General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976).

There can be little doubt that, under the New Hampshire Rape Statute in effect at the time, women and men were treated disparately. It was a crime for a male of any age to have sexual intercourse with a female not his wife who was less than fifteen years old. A fourteen year old boy could have been found guilty of a class A felony if he had sexual intercourse with a fourteen year old girl. A woman of twenty-four years of age who seduced a boy of fourteen would not have been guilty of a crime.[1] Only the male faced the risk of criminal prosecution for engaging in sexual intercourse with a minor.

■ The next step is to determine against what standard the statute is to be measured. There have been two traditional tests to which constitutionally challenged statutes have been subjected; strict scrutiny and rational basis. The strict scrutiny test is applied to statutes that discriminate on the basis of race, alienage or nationality. *See, e. g., Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), *Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948), and is also used where the interests involved are fundamental. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). To pass constitutional muster under the strict scrutiny test, the statute must be necessary to accomplish some legitimate state objective by the least restrictive means possible.

■ The rational basis test means that the state retains broad discretion as long as there is a reasonable basis for the classification.

Under the traditional due process and equal protection standard we do not determine whether a statute is wise, or whether it is necessary, but only whether it is rationally related to a legitimate governmental objective. *Tiews v. School District,* 111 N.H. 14, 20, 273 A.2d 680, 684 (1971).

This is the standard that the New Hampshire Supreme Court applied to the statute in issue.

With the recent proliferation of gender based cases, a new test, standing somewhere between strict scrutiny and rational basis, has begun to emerge.

In *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), the Court, in striking down a state probate statute that gave males a preferred position as executors, stated:

> A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Id.* at 76, 92 S.Ct. at 254. (Citation omitted.)

In *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), a plurality of the Court found that sex was a suspect classification and, therefore, subject to strict scrutiny. It noted, after quoting from *Bradwell v. State,* 16 Wall. 130, 141, 21 L.Ed. 442 (1873), that:

> "The paramount destiny and mission of women are to fulfil the noble and benign offices of wife and mother. This is the law of the Creator." . . .

As a result of notions such as these, our statute books gradually became laden with gross, stereotyped distinctions between the sexes, and, indeed, throughout much of the 19th century the position of

---

1. Under the statute now in effect, such a female would be guilty of a class B felony. NH RSA 632–A:3.

women in our society was, in many respects, comparable to that of blacks under the pre-Civil War slave codes. Neither slaves nor women could hold office, serve on juries, or bring suit in their own names, and married women traditionally were denied the legal capacity to hold or convey property or to serve as legal guardians of their own children. *Frontiero* at 685, 93 S.Ct. at 1769. (Brennan, J.)

In a separate concurrence, the Chief Justice and Justices Powell and Blackmun refused to accept the strict scrutiny standard.

It is unnecessary for the Court in this case to characterize sex as a suspect classification, with all of the far-reaching implications of such a holding. *Id.* at 691–692, 93 S.Ct. at 1773.

Since then, the cases have wavered back and forth between the two tests with the Court often scrutinizing the statutory scheme under the guise of the rational basis test. *See, e. g., Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) (property tax exemption for widows upheld as rationally based due to the disparate economic opportunities afforded men and women); *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (gender based differentiation in the Navy's mandatory discharge regulations rationally related to the laudatory purpose of equalizing promotional opportunities between men and women); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) (granting of Social Security survivors' benefits to widows but not to widowers irrational and based on archaic notions of sex roles); *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975) (gender based distinctions as to age of minority for purposes of child support not rational).

*Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), is the only Supreme Court gender based discrimination case concerning a criminal statute. After examining statistical evidence, the Court struck down a criminal statute which differentiated in the age at which beer could be sold to males (21) and females (18). It found the relationship between gender and the asserted justification for the statutory scheme far too tenuous to withstand the substantial justification test laid out in *Reed.* In the most recent gender based discrimination case involving a section of the Social Security Act, the Court stated:

[It] is forbidden by the Constitution, at least when supported by no more substantial justification than "archaic and overbroad" generalizations, *Schlesinger v. Ballard, supra,* 419 U.S., at 508 [95 S.Ct. 572,] or "old notions," *Stanton v. Stanton,* 421 U.S. 7, 14 [95 S.Ct. 1373] (1975), such as "assumptions as to dependency," *Weinberger v. Wiesenfeld, supra* [420 U.S.] at 645 [95 S.Ct. 1225,] that are more consistent with "the role-typing society has long imposed," *Stanton v. Stanton, supra* [421 U.S.] at 15 [95 S.Ct. 1373,] than with contemporary reality. *Califano v. Goldfarb,* 430 U.S. 199, 207, 97 S.Ct. 1021, 1026, 51 L.Ed.2d 270 (1977).

Mr. Justice Powell's concurring opinion in *Craig* perceptively sums up the direction the law is taking.

As is evident from our opinions, the Court has had difficulty in agreeing upon a standard of equal protection analysis that can be applied consistently to the wide variety of legislative classifications. There are valid reasons for dissatisfaction with the "two-tier" approach that has been prominent in the Court's decisions in the past decade. Although viewed by many as a result-oriented substitute for more critical analysis, that approach— with its narrowly limited "upper-tier"— now has substantial precedential support. As has been true of *Reed* and its progeny, our decision today will be viewed by some as a "middle-tier" approach. While I would not endorse that characterization and would not welcome a further subdividing of equal protection analysis, candor compels the recognition that the relatively deferential "rational basis" standard of review normally applied takes on a sharper focus when we address a gender-based classification. So much is clear from our recent cases. *Craig, supra,* 429 U.S. at 210, 97 S.Ct. at 464.

■ With these guidelines in mind, I now address the statute under which the petitioner was convicted. Two basic reasons are advanced for holding the classification reasonable and not constitutionally suspect:

1. The potential for pregnancy of the female, and

2. The "remote" contingency that an underage male will suffer harmful results from being seduced by an older female.

While the pregnancy reason does have a surface rationality, it does not withstand careful scrutiny. The statute is not directed towards the prevention of pregnancy. In fact, it specifically states that penetration, however slight, is all that is necessary for the crime and that emission is not required. It does not differentiate between a female capable of bearing a child and one who has not yet reached puberty. It does not allow as a defense the use of contraceptives or birth control methods. Moreover, there is no valid reason for singling out the male for criminal treatment where the act is consensual. The Supreme Judicial Court of Massachusetts recently struck down a criminal statute that made a male guilty of a misdemeanor for fathering a child. The Massachusetts Court noted:

> [W]e discern no permissible legislative goal which rationally is achieved by making a father, but not a mother, guilty of conceiving a child out of wedlock. . .
> The imposition of a criminal sentence on the father alone for begetting the child violates the equal protection of the laws. *Commonwealth v. MacKenzie*, 334 N.E.2d 613, 615 (1975).

The second reason advanced is the real basis for the distinction made between males and females.[2] It is predicated on the assumption that the female, particularly a young female, will be harmed by having sexual relations with an older and mature male, but that such harm is unlikely to occur in the reverse situation. This assumption is grounded not on any competent facts or evidence, but rather on societal sexual standards that are rooted in our male oriented background and values. It would be glib to call this attitude a holdover from the Victorian Era because this overlooks our Puritan background and the moral values and standards that are accepted in our society. It is only very recently that we have come to realize that the sexual differences between male and female are not constitutionally valid reasons for setting up different standards of behavior and different laws for men and women. The 1975 statute is, of course, a prime example of the new approach. It makes no distinction between the sexes.

I rule that Section 1 of NH RSA 632 was unconstitutional on its face and when applied to petitioner because it singled out males for disparate treatment under the law as opposed to females and it did not meet the constitutional test required of a sex based statute since it had no "fair and substantial relation to the object of the legislation." *Reed, supra,* 404 U.S. at 76, 92 S.Ct. at 254.

This ruling makes it unnecessary to consider the due process claim.

2. I am aware that the Supreme Court dismissed for want of substantial federal question an appeal from a Texas case which upheld against an equal protection attack an aggravated assault conviction of an adult male. *Buchanan v. State,* 480 S.W.2d 207 (Tex.Cr.App.1972), appeal dismissed, 409 U.S. 814, 93 S.Ct. 175, 34 L.Ed.2d 71 (1972). The Texas statute made an assault by a male on a female an aggravated assault while an assault by a female on a female constituted only a simple assault. The court held that, because the purpose of the statute was to protect against serious bodily injury and because females "as a general rule, are of smaller physical stature and strength than are men," *id.* at 209, the classification was rationally related to the objective of the statute as a whole. I find the Texas case distinguishable from the instant case, and, therefore, conclude that it is not of binding precedential value under *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). The statutes in question are not "sufficiently the same" for *Buchanan* to be controlling precedent, *Hicks* at 345 n.14, 95 S.Ct. 2281, and it is clear that, since 1972, "doctrinal developments indicate" that the equal protection question may now be more substantial. *Hicks* at 344, 95 S.Ct. 2281. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Edelman v. Jordan,* 415 U.S. 651, 671, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

IT IS ORDERED that the Writ of Habeas Corpus issue and that the petitioner be released.

Execution of this order is stayed pending a decision as to appeal by the State of New Hampshire.

