To the Members of the House of Representatives
State Capitol
Montgomery, Alabama
Dear Representatives:
We are in receipt of House Resolution 224, which reads:
“BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE LEGISLATURE OF ALABAMA, That we respectfully request the Honorable Chief Justice and Associate Justices of the Supreme Court, or a majority of them, to give this body their written opinions on the following important constitutional question which has arisen concerning the pending H.B. 59, pertaining to levying a statewide finance charge on forest lands.
“Thirty-seven counties have levied a finance charge on forest lands by either *884 a statewide constitutional amendment, a local constitutional amendment or by a local law. The electors of the counties implementing said finance charge by constitutional amendment were entitled to vote on the question of implementing the levy. Since over one-half of the counties have levied said finance charge, it may be argued that the electors in those counties have already had an opportunity to express their desires on said charge. It may be contended that these electors are not entitled to vote on whether the charge should be implemented in the other counties. It may be argued that said electors will favor implementing said finance charge in the counties that do not presently have said charge, since the charge will not have additional effect on their counties and said electors will desire others to have the same tax liabilities as they possess. It may be argued that H.B. 59 of the 1985 Regular Session permits taxation of the minority by the majority.
“1. Does H.B. 59 of the 1985 Regular Session violate the provisions of the 14th Amendment to the United States Constitution?
“2. Does H.B. 59 of the 1985 Regular Session violate Article IV, Section 4 of the United States Constitution?
“3. Does H.B. 59 of the 1985 Regular Session violate any other provision of the United States Constitution?
“RESOLVED FURTHER, That the Clerk of the House of Representatives is hereby directed to send sufficient copies of the pending bill, H.B. 59, to the Clerk of the Supreme Court of Alabama, and to transmit this request to the Justices of the Supreme Court forthwith upon adoption of this resolution.”
The copy of the H.B. 59 forwarded with the resolution reads:
“A BILL
TO BE ENTITLED
AN ACT
“To propose an amendment to the Constitution of Alabama 1901, to provide for the promotion of forest fire protection on forest lands within this state; to provide for the levying, collecting and distribution of assessments for costs; replacing or superseding certain local laws heretofore enacted; to provide for similar local forest fire protection and assessment programs, upon ratification by the voters of this amendment; and to authorize the legislature to provide funds for the administration of such forest fire protection program hereby enacted on a statewide basis.
“BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
Section 1. The following amendment to the Constitution of Alabama of 1901, as amended, is proposed and shall become valid as a part thereof when approved by a majority of the qualified electors voting thereon and in accordance with Sections 284, 285 and 287 of the Constitution of 1901 as amended:
PROPOSED AMENDMENT
“The legislature may prescribe by general law for forest fire protection in the counties and may assess a finance charge on forest lands in this state to further promote and provide for financing such protection. The legislature may define forest lands and provide for the manner of levying and collecting such assessment and the distribution thereof. The legislature may further provide for the administration of such forest fire protection law. All local laws heretofore enacted relating to forest fire protection, and assessing a local finance charge> shall not be declared unconstitutional or invalid by any court in this state, but upon proper passage of a general act of the legislature adopted pursuant to this amendment, said local acts shall be replaced or superseded by such general act at the time this amendment is ratified by the voters. The general legislative act will not be considered one in the nature of an ad valorem assessment or tax and *885 no referendum shall be provided or required except for the adoption of this amendment.
“Section 2. An election upon the proposed amendment is ordered to be held at the next general, special, primary or constitutional amendment election after the expiration of three months from final adjournment of the current session of the Legislature. The election shall be held in accordance with the provisions of Sections 284 and 285 of the Constitution of Alabama, as amended, and the general election laws of this state.
“Section 3. Notice of the election and of the proposed amendment shall be given by proclamation of the Governor, which proclamation shall be published once a week for four successive weeks next preceding the day appointed for the election in a newspaper in each county of the state. In every county in which no newspaper is published, a copy of the notice shall be posted at each courthouse and post office.
“Section 4. The provisions of this act shall be effective immediately upon ratification by the people and the Governor thereafter shall proclaim this amendment as required by law.”
The pending House Bill 59 proposes a constitutional amendment that, as we read it, would do nothing more than authorize the Legislature to provide by a general law for forest fire protection in the counties of the state, authorize the legislature to define what constituted “forest lands,” and allow the legislature to provide for the manner of levying and collecting assessments and for the administration of those assessments; therefore, we see nothing in the proposed amendment, on its face, which would violate the provisions of amendment fourteen to the Constitution of the United States. We reach this conclusion, because there is no provision of amendment fourteen to the federal Constitution which we believe would prohibit the people of Alabama from granting to the legislature the powers enumerated above and set forth in the proposed constitutional amendment.
However, in your resolution requesting our opinion, you state that “[t]hirty-seven counties have levied a finance charge on forest lands by either a statewide constitutional amendment, a local constitutional amendment or by a local law,” and that “[t]he electors of the counties implementing [the] finance charge by constitutional amendment were entitled to vote on the question of implementing the levy.” You then state as follows:
“Since over one-half of the counties have levied said finance charge, it may be argued that the electors in those counties have already had an opportunity to express their desires on said charge. It may be contended that these electors are not entitled to vote on whether the charge should be implemented in the other counties. It may be argued that said electors will favor implementing said finance charge in the counties that do not presently have said charge, since the charge will not have additional effect on their counties and said electors will desire others to have the same tax liabilities as they possess. It may be argued that H.B. 59 of the 1985 Regular Session permits taxation of the minority by the majority.”
From a reading of your resolution, it appears that you are concerned that the proposed constitutional amendment might permit “taxation of the minority by the majority,” and, therefore, might be viola-tive of the equal protection clause of the fourteenth amendment. Stated otherwise, you appear to be concerned whether the proposed legislation would contravene federal constitutional limitations on the right to vote and dilution of voting power. In this regard, we call your attention to the case of Gordon v. Lance, 403 U.S. 1, 91 S.Ct. 1889, 29 L.Ed.2d 273 (1971), which addresses the question of the denial or dilution of voting power. There, West Virginia’s constitutional and statutory requirement that political subdivisions may not incur bonded indebtedness or increase tax rates beyond those established by the State Constitution without the approval of 60% of the voters in a referendum election was *886 held not to discriminate against or authorize discrimination against any identifiable class and not to violate the Equal Protection Clause or any other provision of the United States Constitution.
The Court opined:
“Although West Virginia has not denied any group access to the ballot, it has indeed made it more difficult for some kinds of governmental actions to be taken. Certainly any departure from strict majority rule gives disproportionate power to the minority. But there is nothing in the language of the Constitution, our history, or our cases that requires that a majority always prevail on every issue. On the contrary, while we have recognized that state officials are normally chosen by a vote of the majority of the electorate, we have found no constitutional barrier to the selection of a Governor by a state legislature, after no candidate received a majority of the popular vote. Fortson v. Moms, 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966).
“The Federal Constitution itself provides that a simple majority vote is insufficient on some issues; the provisions on impeachment and ratification of treaties are but two examples. Moreover, the Bill of Rights removes entire areas of legislation from the concept of majorita-rian supremacy. The constitutions of many States prohibit or severely limit the power of the legislature to levy new taxes or to create or increase bonded indebtedness, thereby insulating entire areas from majority control. Whether these matters of finance and taxation are to be considered as less ‘important’ than matters of treaties, foreign policy or impeachment of public officers is more properly left to the determination by the States and the people than to the courts operating under the broad mandate of the Fourteenth Amendment. It must be remembered that in voting to issue bonds voters are committing, in part, the credit of infants and of generations yet unborn, and some restriction on such commitment is not an unreasonable demand. That the bond issue may have the desirable objective of providing better education for future generations goes to the wisdom of an indebtedness limitation: it does not alter the basic fact that the balancing of interests is one for the State to resolve.
“Wisely or not, the people of the State of West Virginia have long since resolved to remove from a simple majority vote the choice on certain decisions as to what indebtedness may be incurred and what taxes their children will bear.
“We conclude that so long as such provisions do not discriminate against or authorize discrimination against any identifiable class they do not violate the Equal Protection Clause. We see no meaningful distinction between such absolute provisions on debt, changeable only by constitutional amendment, and provisions that legislative decisions on the same issues require more than a majority vote in the legislature. On the contrary, these latter provisions may, in practice, be less burdensome than the amendment process. Moreover, the same considerations apply when the ultimate power, rather than being delegated to the legislature, remains with the people, by way of a referendum. Indeed, we see no constitutional distinction between the 60% requirement in the present case and a state requirement that a given issue be approved by a majority of all registered voters. Cf. Clay v. Thornton, 253 S.C. 209, 169 S.E.2d 617 (1969), appeal dismissed sub nom. Turner v. Clay, 397 U.S. 39, 90 S.Ct. 814, 25 L.Ed.2d 40 (1970).
“That West Virginia has adopted a rule of decision, applicable to all bond referenda, by which the strong consensus of three-fifths is required before indebtedness is authorized, does not violate the Equal Protection Clause or any other provision of the Constitution.”
403 U.S. at 5-8, 91 S.Ct. at 1891-93.
In Alabama, this Court, in Thorn v. Jefferson County, 375 So.2d 780 (Ala.1979), a case involving a claim of unequal protection of the law in a state taxing scheme, set *887 out some of the principles of law which are applicable when taxing statutes are attacked as being unconstitutional because of unequal protection of the law. At this time, we cannot express an opinion on any legislation which might be adopted by the legislature if the proposed constitutional amendment is ratified, because there is not now pending before you any such legislation. Code 1975, § 12-2-10, does not authorize the expression of opinions on hypothetical questions. Opinions of the Justices, 267 Ala. 110, 100 So.2d 565 (1958). We are of the opinion, however, that the proposed constitutional amendment, which would make some changes in the method by which a tax is levied and collected, would not, on its face, violate the fourteenth amendment to the federal Constitution.
In your second question, you ask whether the proposed constitutional amendment would violate article IV, section 4, of the United States Constitution, which guarantees to every state a republican form of government. We cannot see how the proposed constitutional amendment, on its face, would contravene article IV, section 4. In the federal Constitution and in the state Constitution, the people have provided a procedure for changing the basic constitutional documents through the amendment process. The fact that the people in the various counties were previously allowed to conduct a referendum and decide whether to tax themselves, and that under the proposed amendment, there would be no local elections on the question, does not mean that the people are thereby deprived of the right to vote, because the people would still be guaranteed the right to vote for members of the Alabama Legislature, even if the proposed constitutional amendment is ratified. Consequently, we answer your second question in the negative.
Your third question, “Does H.B. 59 of the 1985 Regular Session violate any other provision of the United States Constitution?” is much too broad. The Justices have consistently restricted advisory opinions to questions on the constitutionality of legislation arising under a stated section or stated sections of the Constitution. Requests such as “Does the act violate any provision of the Constitution?” or “Is the act constitutional?” are considered too broad, general, and indefinite. Opinion of the Justices, 294 Ala. 604, 320 So.2d 622 (1975).
Respectfully submitted,
C.C. TORBERT, Jr. Chief Justice
HUGH MADDOX
JAMES H. FAULKNER
RENEAU P. ALMON
JANIE L. SHORES
SAM A. BEATTY
OSCAR W. ADAMS, Jr. Justices