Request of House of Representatives, No. 5949.

OPINION OF THE JUSTICES.

Submitted May 20, 1969.
Answer returned June 3, 1969.

The following resolution was adopted by the House of Representatives May 6, 1969 and filed in this court on May 7, 1969:

"WHEREAS, there is pending before the House of Representatives House Bill No. 708, An Act authorizing municipalities to levy special assessments for the construction, operation and maintenance of parking facilities and approaches thereto, and House Bill No. 786, An Act authorizing towns and cities to increase motor vehicle permit fees; and

"WHEREAS, there has been proposed to said bills amendments which would limit said bills to cities and towns with a population of not less than sixty thousand, and

"WHEREAS, questions have been raised concerning the constitutionality of said bills with the proposed amendments; now therefore be it

"RESOLVED, that the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of law:

"1. If the bills with proposed amendments are enacted, would they be constitutional?

"2. Does a law which applies only to municipalities with a population of not less than sixty thousand require a referendum vote by the voters of Manchester since Manchester will be the only municipality affected?

"3. May the legislature authorize municipalities to collect motor vehicle permit fees for the purpose of funding the construction of parking facilities, as is proposed in HB 786?

"4. May the legislature authorize municipalities to levy assessments upon owners or lessees of lease-hold interest whose lands receive special benefits from the construction of parking facilities in order to defray the cost of such facilities as proposed in HB 708? (252-A:7)

"5. Is the basis of assessment as proposed in HB 708 (252-A:8) constitutional?

"6. May the legislature authorize municipalities to make assessments for operating expenses as provided in HB 708 (252-A:9)?

"7. May the legislature authorize municipalities to lease air rights as provided in HB 708, part 2 (46-B:2)?

"8. Would such lease be subject to taxation as provided in HB 708, part 2 (48-B:4)?

"Be it Further Resolved that the Speaker transmit seven copies of this resolution, of House Bill No. 708, of House Bill No. 786, of the proposed amendment to House Bill No. 708, and of the proposed amendment to House Bill No. 786 to the Clerk of the Supreme Court for consideration by said court."

The following answer was returned:

*To the House of Representatives:*

The undersigned Justices of the Supreme Court return the following answer to the inquiries contained in your resolution of May 6, 1969:

House Bill 708 would authorize municipalities to construct, or cause to be constructed, public parking facilities as therein defined, and to finance the cost of such construction in part by means of assessments against owners or lessees of land receiving special benefits from such facilities, or by the issuance of bonds, fifty per cent of the principal amount of which would be redeemed from such assessments, or from parking revenues, or from funds raised from motor vehicle permit fees as would be provided by House Bill 786. House Bill 708 would further authorize municipalities to defray the operating expenses of such facilities by like assessments, and would establish procedures for the collection and abatement of such assessments.

House Bill 786 would authorize municipalities to collect, in addition to the permit fees now charged for the registration of motor vehicles under RSA ch. 260, sums not exceeding seven mills on each dollar of the list price of motor vehicles registered in any year, which additional fees would be required to be used for the construction, operation and maintenance of public parking facilities, as provided by House Bill 708.

The proposed amendments to these House Bills would limit the authority granted by the bills, to municipalities in the State having a population of not less than sixty thousand.

In addition to the provisions mentioned above, House Bill

708, by enacting a new chapter of RSA (ch. 48-B) would authorize municipalities, without limitation as to population, to lease "air rights over public streets and ways, public parking facilities and other public buildings," and property, subject to certain conditions and limitations specified therein. Additionally, it would authorize municipalities and their housing authorities to enter into agreements for the construction of public parking facilities by such authorities, to be conveyed to the municipality or its designee upon completion, and to be financed as provided by other sections of the bill.

Your resolution propounds eight questions with respect to these bills, the first of which is whether they would be constitutional if enacted, and the remainder of which pose questions regarding specific features of the bills.

The stated purpose of House Bill 708 is to abate traffic congestion and thereby to eliminate the dangers and economic consequences which arise from the obstruction of free circulation of traffic, by providing off-street public parking facilities in advantageous locations in the larger municipalities of the State. That this is a valid public purpose for which public funds may be appropriated and the power of eminent domain may be granted is not open to doubt. See *Velishka* v. *Nashua,* 99 N. H. 161, 165. Public parking facilities are an essential part of our public highway system. See *Opinion of the Justices,* 94 N. H. 501; *State* v. *Rosier,* 105 N. H. 6; *Papademas* v. *State,* 108 N. H. 456; *Stott* v. *Manchester,* 109 N. H. 59. The construction and maintenance of such facilities is a recognized and established municipal function. *Stott* v. *Manchester, supra:* See *Court Street Parking Co.* v. *Boston,* 336 Mass. 224; *Pierce* v. *Wellesley,* 336 Mass. 517.

In view of the generality of your first question, we do not deem it within our province to speculate on whether other constitutional issues might arise, apart from those suggested by your remaining questions. We answer your first inquiry by stating that no constitutional defects are apparent on the face of the two bills. *Opinion of the Justices,* 103 N. H. 258, 261; *Opinion of the Justices,* 103 N. H. 262.

Question 2 presents an issue which arises because of the provisions of *Art.* 39th, Part I of the Constitution, inserted in 1966, namely whether a referendum vote by the voters of Manchester would be required in order for it to exercise the authority which

the proposed statutes would confer. Our answer is that the Constitution does not require such a referendum. See *Opinion of the Justices,* 109 N. H. 367.

Article 39th, Part 1, of the Constitution provides that no law changing the charter or form of government "of a particular city or town" shall be enacted, except to become effective upon approval by the voters upon a referendum. It further provides that the Legislature "may by general law authorize cities and towns to adopt or amend their charters or forms of government in any way which is not in conflict with general law," effective only upon approval by referendum vote.

These provisions were designed to place limitations upon the traditional "plenary control by the Legislature over municipalities" (*Lisbon* v. *Lisbon Village District,* 104 N. H. 255, 258) by insuring that any changes in the charter or form of government of a "particular city or town" should be made by the Legislature only with the consent of the governed, and that any change instituted by the municipalities themselves, under general legislative authority, should similarly become effective only with like consent. See Report to the Fifteenth Constitutional Convention, Committee to Study the State Constitution, *pp.* 22, 24; Voter's Guide to Proposed Amendments to the Constitution, November 8, 1966 election Question 3; Laws 1963, *c.* 275, RSA ch. 49 - A ( supp).

It is our opinion that House Bills 708 and 786, if amended as suggested, will not conflict with these provisions of the Constitution or become subject to the requirement of a referendum which Article 39 imposes. The bills are of general application, and do not purport to alter the charter or form of government of a "particular city or town." Nor would either of them, as a "general law" authorize cities and towns in general to amend their own charters or forms of government, so as to require approval by the voters on referendum. *Cf.* Laws 1963, *c.* 275, RSA ch. 49 - A (supp), *supra.* While implementation of the provisions of the bills by vote of the governing board or legislative body of the affected municipality would be required by the bills, such action would not alter the charter or the form of government of the municipality concerned.

Rather, the bills would confer upon all cities and towns having populations in excess of sixty thousand, authority to exercise specific powers in accordance with a plan for providing public parking facilities for such municipalities adopted by their

own legislative bodies. See *Goodrich Falls Co.* v. *Howard,* 86 N. H. 512, 518.

Since a reasonable relation may be thought to exist between the purpose of the bills and the class of municipalities to which they will apply, they will not be converted from "general" into "special" laws by reason of the circumstance that they can presently apply in their essential features to the city of Manchester alone. See *Opinion of the Justices,* 103 N. H. 325, 328, and cases cited. This is so because in all substantial particulars the statutes if enacted will be capable of general application in the future to other municipalities as they increase in population to the level established by the legislation. 2 McQuillin, Municipal Corporations (3d *ed.*) *ss.* 4.70, 4.72. Analogous provisions are presently to be found in our statutes, RSA 500: 2 and 3; RSA 502:7; RSA 398:4. See also, RSA 49-A:8 (2) (supp).

The answer to your second question, as applied to House Bills 708 and 786, is "No" a referendum vote would not be required.

Question 3 is answered in the affirmative; the Legislature may authorize the collection of additional motor vehicle permit fees by municipalities for the purpose of funding the construction of public parking facilities. This use of revenue so derived would be consistent with the provisions of *Art.* 6-a, Part 2 of the Constitution. See *Opinion of the Justices,* 94 N. H. 501, *supra.*

Questions 4, 5, and 6 are also answered in the affirmative; the Legislature may authorize municipalities to levy assessments upon owners or lessees of lands receiving special benefits from the proposed parking facilities, for the purpose of paying the costs of such facilities, provided the assessments do not exceed the value of such special benefits. This question was decided in principle in *Manchester* v. *Straw,* 86 N. H. 390. Approval of the use of such assessments in order to provide off-street parking has received general approval elsewhere. 14 McQuillin, Municipal Corporations, *supra, s.* 38.28 a (supp); *Crampton* v. *Royal Oak,* 362 Mich. 503; *Trczyniewski* v. *Milwaukee,* 15 Wis. 2d 236.

So far as such assessments would be imposed upon lessees of benefited properties, their validity is supported by *Granite State Land Co.* v. *Hampton,* 76 N. H. 1. See also, *Newmarket Mfg. Co.* v. *Nottingham,* 86 N. H. 321; RSA 49-A:40, 77 (supp); RSA 252:2, 9.

The basis for such assessments is primarily a matter of legislative discretion. *Manchester* v. *Straw,* 86 N. H. 390, *supra,* 393. Under House Bill 708 it would be determined by the plan adopted by the legislative body of the municipality, but all assessments would be subject to appeal, abatement for cause, and correction. The fundamental guide to the constitutionality of such assessments is that the assessment shall not exceed the value of the special benefits conferred (*Manchester* v. *Straw, supra*), so that any assessment fixed by arbitrary standard must be subject to the appeal which this bill would provide. *Id.,* 393. Assessments for operating expenses would likewise be permissible and governed by the same standards. *Granite State Land Co.* v. *Hampton, supra.*

Questions 7 and 8 are answered in the affirmative; the Legislature may authorize municipalities to lease as provided by House Bill 708 such air rights as they may have, and make such leaseholds subject to taxation as therein provided. The right of municipalities to lease public property not needed for municipal purposes is well established. *Meredith* v. *Fullerton,* 83 N. H. 124; *Douglas* v. *Hollis,* 86 N. H. 578; *Velishka* v. *Nashua,* 99 N. H. 161; *Hampton* v. *Hampton Beach Improvement Co.,* 107 N. H. 89. The fact that such property consists of air rights above publicly owned lands does not alter the principle. *Cf. Lowell* v. *Boston,* 322 Mass. 709; *San Francisco* v. *Linares,* 16 Cal. 2d 441, both involving space beneath public property. Similarly, we see no reason to question the constitutionality of the proposed provisions by which "any building or other thing erected or affixed under such [a] lease" of air rights would be taxed upon the same basis as other property or "estates." Const. Pt. 2, *Art.* 5th. See *Hampton* v. *Hampton Beach Improvement Co., supra; Newmarket Mfg. Co.* v. *Nottingham,* 86 N. H. 321, *supra.*

FRANK R. KENISON.
LAURENCE I. DUNCAN.
EDWARD J. LAMPRON.
WILLIAM A. GRIMES.
ROBERT F. GRIFFITH.

*William H. Craig,* for the city of Manchester, for the bills.

*John C. Mongan*, mayor, for the city of Manchester, also for the bills.

June 3, 1969.