Request of the House of Representatives
No. 91-128

OPINION OF THE JUSTICES (Weirs Beach)

October 29, 1991

The following Resolution No. 19, requesting an opinion of the justices, was adopted by the House of Representatives on March 21, 1991, and filed with the Supreme Court on March 27, 1991:

"Whereas, there is pending in the House, House Bill 762-FN, 'An Act to incorporate the inhabitants of the northeasterly part of Laconia into a separate town to be known as Weirs Beach, with all the privileges and immunities of other cities and towns in this state'; and

"Whereas, 'Revised Charter of City of Laconia, 1970,' as recorded at the office of the Secretary of State [a copy of which Charter shall accompany this resolution], contains in its Article I a description of the boundaries of the various wards of the city of Laconia; and

"Whereas, 'Revised Charter of City of Laconia, 1970,' as recorded at the office of the Secretary of State, provides for a city council-city manager form of government; and

"Whereas, enactment of HB 762-FN would, by establishing a new town of Weirs Beach within the current boundaries of the city of Laconia, effect a change of the boundaries of the city of Laconia; and

"Whereas, enactment of HB 762-FN would, by establishing a new town of Weirs Beach, cause those inhabitants of the new town of Weirs Beach who were formerly inhabitants of the city of Laconia to become inhabitants of a town as opposed to a city, but would not effect a change in the form of government of the remaining inhabitants of the city of Laconia; and

"Whereas, HB 762-FN contains a provision requiring a referendum of the inhabitants of that portion of the city of Laconia which would become the new town of Weirs Beach, as a precondition to the bill's taking effect if enacted; and

"Whereas, HB 762-FN contains certain provisions relating to the apportionment of debts, liabilities, obligations, real estate, equipment and personal property between the city of Laconia and the new town of Weirs Beach; and

"Whereas, a question has arisen as to the constitutionality of the provisions of the bill; and

"Whereas, it is important that the question of the constitutionality of said provisions should be settled in advance of its enactment; now, therefore, be it

"Resolved by the house:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

1. Would the change of the current boundaries of the city of Laconia, effected by enactment of HB 762-FN, constitute a change to 'the charter or form of government' of the city of Laconia, as that phrase is contemplated by Part I, Article 39 of the New Hampshire Constitution, in view of the court's decision in *Sedgewick v. City of Dover,* 122 N.H. 193 (1982).

2. Would enactment of HB 762-FN, by establishing a new town of Weirs Beach and causing those inhabitants of the new town of Weirs Beach who were formerly inhabitants of the city of Laconia to become inhabitants of a town as opposed to a city, change 'the charter or form of government' of the city of Laconia, as that phrase is contemplated by Part I, Article 39 of the New Hampshire Constitution?

3. Would any other provisions of HB 762-FN, if enacted, constitute a change to 'the charter or form of government' of the city of Laconia, as that phrase is contemplated by Part I, Article 39 of the New Hampshire Constitution?

4. If the answer to question 1, 2, or 3 is in the affirmative, does the provision contained in HB 762-FN, requiring a referendum of the

inhabitants of that portion of the city of Laconia which would become the new town of Weirs Beach as a precondition to the bill's taking effect, satisfy the requirements of Part I, Article 39 of the New Hampshire Constitution?

5. Do any other aspects of HB 762-FN violate or conflict with any provisions of the New Hampshire Constitution?

"That the clerk of the House of Representatives transmit copies of this resolution and HB 762-FN to the Justices of the New Hampshire Supreme Court."

The following response is respectfully returned.

*To the Honorable House of Representatives:*

The undersigned Justices of the Supreme Court now submit the following replies to your questions of March 21, 1991. After our receipt of your resolution on March 27, 1991, we invited interested parties to file memoranda of law with the court until May 15, 1991.

House Bill ("HB") 762-FN proposes to incorporate a new town of Weirs Beach and partition portions of two existing wards of the city of Laconia for the new town's territorial jurisdiction. The memoranda filed with this court demonstrate that this partition is earnestly sought by at least some Weirs Beach area residents, who perceive themselves geographically and politically isolated from Laconia. It is earnestly opposed by the city of Laconia. The existing Laconia city charter includes a detailed description of the boundaries of each ward of the city, Revised Charter of City of Laconia, 1970, § 1:02, as well as a more generalized statement of what areas constitute the city, *id.* § 1:01. A boundary description of some kind has been in the Laconia charter since it was first granted to the inhabitants of the area by the legislature, Laws 1893, ch. 241, several years after the legislature separated the Laconia area from Meredith, Laws 1855, ch. 1689.

Section one of HB 762-FN contains a detailed three-page description of a boundary line for the proposed town of Weirs Beach. The bill also states that "[t]he boundaries of the city of Laconia shall be as formerly established less those lands bounded and described in this act." Without question, the bill would define new boundaries for Laconia and, although not expressly amending the Laconia charter, would cause those sections of the Laconia charter which purport to delineate the city boundaries to be obsolete. The issue which arises is whether this redrawing of boundaries changes the "charter" of Laconia in the integral manner which would trigger the referendum

requirement of part I, article 39 of the New Hampshire Constitution, or whether such redrawing is a legitimate exercise of legislative power outside the scope of the charter change requirements.

 Municipalities in the State of New Hampshire are divisions of the State, and they derive their authority from the legislature. *Dugas v. Town of Conway*, 125 N.H. 175, 181, 480 A.2d 71, 75 (1984). As recently as 1962, in addressing similar partition legislation, this court held that the traditional "plenary control by the Legislature over municipalities" included the power to create, modify, or divide them for the advancement of the public interest. *Lisbon v. Lisbon Village District*, 104 N.H. 255, 258, 183 A.2d 250, 253 (1962). From time to time, the legislature has seen fit to vest certain local options in the towns and cities of this State. Such options have run to the enactment of charters and the ordering of affairs of conducting local government. *See* Laws 1963, 275:1.

In 1966, however, partly in response to a perception that the legislature was becoming a forum for concerns better handled at the level of local government, the legislature's plenary control over municipalities was constitutionally limited. In that year, our constitution was amended to provide that the legislature could not, by legislative action alone, amend the "charter or form of government" of a town or city and could not enact local option enabling legislation for such amendment unless subject to a referendum requirement. The amendment reads:

> "No law changing the charter or form of government of a particular city or town shall be enacted by the legislature except to become effective upon the approval of the voters of such city or town upon a referendum to be provided for in said law.

> The legislature may by general law authorize cities and towns to adopt or amend their charters or forms of government in any way which is not in conflict with general law, provided that such charters or amendments shall become effective only upon the approval of the voters of each such city or town on a referendum."

N.H. CONST. pt. I, art. 39.

 This amendment to our constitution has never been interpreted as a grant to municipalities of the supreme legislative authority over all municipal affairs, even when such affairs are memorialized by charter. *See Girard v. Town of Allenstown*, 121

N.H. 268, 272, 428 A.2d 488, 491 (1981). This broader authority is exclusively vested in the legislature by part II, article 2 of our constitution. Nor does the amendment have the effect of completely insulating municipalities from legislative control. It does not render inviolate, or subject to the constitutionally prescribed referendum procedure, any matter or issue that the municipality chooses to include in its charter. Rather, what part I, article 39 does is grant municipal citizens the right to approve a proposed change to "the form of their local government *as enacted in their charters." Seabrook Citizens v. Yankee Greyhound Racing, Inc.*, 123 N.H. 103, 108, 456 A.2d 973, 975 (1983) (emphasis added); *see also Sedgewick v. City of Dover*, 122 N.H. 193, 197, 444 A.2d 490, 492 (1982). The amendment to our constitution did not remove from the legislature its traditionally unrestricted authority over other aspects of municipal functions. *Id.* This traditional legislative authority, unaffected by the constitutional provision, includes the power to create new municipalities or to modify the boundaries of existing ones in furtherance of the public interest. Although HB 762-FN includes what are in effect textual changes to the Laconia city charter, the only elements of a particular municipality's charter which are constitutionally insulated from legislative change, absent referendum, are those provisions concerned with the form of local government. The alteration of city boundaries proposed by the bill does not fall within the constitutional prohibition. Therefore, we return a negative answer to question one.

Question two inquires whether the enactment of HB 762-FN would "change the charter or form of government" of the city of Laconia because the inhabitants of the new town of Weirs Beach would become inhabitants of a town as opposed to a city. We return a negative answer. Under the proposal, Laconia will continue with its present form of government intact, and there will be no change in the form of local government as enacted in its charter. Article 39 prohibits a change to the form of government of a *particular* city or town. A comparison of the city charter with the proposed legislation demonstrates that the city government of the territory remaining under the jurisdiction of Laconia would remain unchanged. The constitutional prohibition only bars a legislative change of *Laconia's* form of government. The proposed formation of the town of Weirs Beach, separate and apart from the newly legislatively defined Laconia, does not violate article 39. Legislation does not offend article 39 when it establishes the form of government of persons living outside the territorial jurisdiction of the charter city.

As for question three, we do not consider it appropriate to speculate whether this multipart bill might give rise to any part I, article 39 issues other than those suggested by questions one and two. *Opinion of the Justices*, 109 N.H. 396, 399, 254 A.2d 273, 276 (1969). We therefore answer question three by stating that there are no article 39 defects apparent upon the face of the bill.

As our answers to questions one and two are in the negative, we do not address question four. The matter of whether to hold referenda remains strictly a legislative consideration. We do call attention to RSA 51:9, enacted in 1903, which contains a referendum requirement. Since this is a creature of the legislature, the legislature is in a position to determine its applicability. *See* Laws 1959, 408:2 (finding RSA 51:9 inapplicable to change of boundary line between Stratham and Exeter). A consistent legislative approach might specifically refer to RSA 51:9. *See* Laws 1959, 408:2.

Finally, in accordance with our long-standing practice, we must also respectfully decline to answer question five, whether HB 762-FN violates or conflicts with any other provisions of the New Hampshire Constitution, due to its generality. *Opinion of the Justices*, 131 N.H. 640, 644, 557 A.2d 273, 276 (1989).

DAVID A. BROCK
WILLIAM F. BATCHELDER
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III
SHERMAN D. HORTON, JR.

October 29, 1991

*Bianco Professional Association*, of Concord (*James J. Bianco, Jr.*, and *Michael J. Farley*), filed memoranda of law on behalf of the Committee for the Town of Weirs Beach in support of negative answers.

*Burke & Baillargeon*, of Gilford (*James L. Burke*), filed memoranda of law on behalf of the City of Laconia in support of affirmative answers.

*Susanne A. Price*, of Laconia, filed a memorandum of law in support of affirmative answers.