680

Request of the Senate
No. 00-148

## OPINION OF THE JUSTICES

### (Municipal Bonds)

January 19, 2001

It was resolved by the Senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of law:

1. If SB 365-LOCAL with the proposed amendment is enacted, would it in any way violate the provisions of the first sentence of Part I, Article 39 of the New Hampshire Constitution, specifying that no law changing the charter or form of government of a particular city or town shall be enacted by the legislature except to become effective upon the approval of the voters in a local referendum provided for in the law?

2. If SB 365-LOCAL with the proposed amendment is enacted, would it in any way violate the provisions of the second sentence of Part I, Article 39 of the New Hampshire Constitution, specifying that general laws authorizing cities and towns to adopt or amend their charters or forms of government shall become effective only upon the approval of the voters in a local referendum?

3. If under SB 365-LOCAL with the proposed amendment the majority voting requirements would differ between local political

subdivisions with and without the optional voting procedures under RSA 40:13, will this result in the infringement of any person's rights under the equal protection, voting, or due process protections of the state or federal constitutions?

4. Do any other aspects of SB 365-LOCAL with the proposed amendment violate or conflict with any provisions of the state constitution?"

The full text of the senate resolution is reproduced as an appendix to this opinion.

*To the Honorable Senate:*

The following response is respectfully returned:

Senate bill 365-LOCAL (the bill) proposes to amend RSA 33:8 to reduce the voting majority necessary to authorize the issuance of bonds or notes in cities, towns, school districts and village districts to a uniform three-fifths for all such entities. Currently, RSA 33:8 requires a three-fifths majority to authorize the issuance of bonds in "official ballot" towns and school districts, and a two-thirds majority to authorize the issuance of bonds in all other towns and school districts that operate under a traditional "town meeting" form of government.

Your first and second questions ask whether the bill would violate the provisions of Part I, Article 39 of the New Hampshire Constitution. We answer these questions in the negative.

Part I, Article 39 provides:

> No law changing the charter or form of government of a particular city or town shall be enacted by the legislature except to become effective upon the approval of the voters of such city or town upon a referendum to be provided for in said law.
> The legislature may by general law authorize cities and towns to adopt or amend their charters or forms of government in any way which is not in conflict with general law, provided that such charters or amendments shall become effective only upon the approval of the voters of each such city or town on a referendum.

This constitutional provision was added in 1966 to address two specific concerns: first, that the legislature could "subject a city to restrictions in its charter which do not apply to cities generally"; and second, that cities would continue to burden the legislature with

charter issues rather than solving them locally. REPORT TO THE FIFTEENTH CONSTITUTIONAL CONVENTION, COMMISSION TO STUDY THE STATE CONSTITUTION at 24. As the November 8, 1966 VOTERS' GUIDE explained, the proposed constitutional amendment was limited in that it would "not require a referendum on general legislation which affects alike all cities and towns, or all cities or towns in the same class. Nor w[ould] this provision affect special acts which do not literally change the charter or form of government of a city or town." VOTERS' GUIDE TO PROPOSED AMENDMENTS TO CONSTITUTION OF THE STATE OF NEW HAMPSHIRE, Election Question 3.

> These provisions were designed to place limitations upon the traditional "plenary control by the Legislature over municipalities" by insuring that any changes in the charter or form of government of a "particular city or town" should be made by the Legislature only with the consent of the governed, and that any change instituted by the municipalities themselves, under general legislative authority, should similarly become effective only with like consent.

*Opinion of the Justices,* 109 N.H. 396, 400, 254 A.2d 273, 276 (1969) (citation omitted).

The bill before us does not trigger either of the referendum requirements of Part I, Article 39. The bill proposes general legislation that applies to all cities, towns, school districts and village districts in the State, not to a *particular* city, town, school district or village district. *See id.* The purpose of the bill is to establish a uniform state-wide supermajority voting requirement for the issuance of bonds and notes. Thus, the bill as proposed does not change the charter or form of government of a "particular city or town."

In addition, the bill does not "authorize cities and towns in general to amend their own charters or forms of government, so as to require approval by the voters on referendum." *Id.* Part I, Article 39 "was intended to prevent the form of government . . . from being altered by the legislature without a referendum of the people affected, and not to prevent the legislature from conferring additional powers upon a particular city to be exercised under its existing form of government." *Opinion of the Justices,* 112 N.H. 42, 46, 288 A.2d 697, 700 (1972).

The extent of home-rule power granted by Part I, Article 39 is "the prerogative to choose" one of the statutorily specified forms of municipal government. *See Girard v. Town of Allenstown,* 121 N.H.

268, 272, 428 A.2d 488, 491 (1981); RSA 49-B:2, I-III. Thus, the legislature's plenary power over municipalities is limited "by provisions of our State Constitution which grant municipalities only the right to control the form of their local government as enacted in their charters. Otherwise, the legislature may grant, withhold, or withdraw local control as it sees fit." *Seabrook Citizens v. Yankee Greyhound Racing, Inc.*, 123 N.H. 103, 108, 456 A.2d 973, 975-76 (1983) (citations omitted).

Part I, Article 39 "has never been interpreted as a grant to municipalities of the supreme legislative authority over all municipal affairs." *Opinion of the Justices (Weirs Beach)*, 134 N.H. 711, 715, 598 A.2d 864, 867 (1991). "This broader authority is exclusively vested in the legislature by part II, article 2 of our constitution." *Id.* at 716, 598 A.2d at 867.

■ The bill would impose upon cities and towns, under their existing forms of government, a uniform voting requirement for the issuance of debt. This reduces, in some cities and towns, the supermajority threshold for municipalities to issue debt, a power vested solely in the legislature and subsequently delegated. *See id.* (Part I, Article 39 has no impact on the legislature's unrestricted authority over other aspects of municipal functions). For these reasons, we answer your first and second questions in the negative.

■ Your third question asks whether differing majority voting requirements between local political subdivisions with and without the optional voting procedures under RSA 40:13 would "result in the infringement of any person's rights under the equal protection, voting, or due process protections of the state or federal constitutions." We answer in the negative.

In 1999, RSA 33:8 was amended to reduce the majority vote requirement for approval of bonds and notes by municipalities which have adopted voting procedures pursuant to RSA 40:13 from two-thirds to three-fifths. RSA 33:8 (2000). In all other municipalities, the required majority vote remained at two-thirds. The bill proposes to amend RSA 33:8 again to change the majority vote required for bonds and notes to three-fifths for all municipalities. On its face, the legislation would result in a uniform majority vote requirement across the State, thereby raising no equal protection, voting, or due process implications.

■ Your fourth question asks whether any other aspects of the bill "violate or conflict with any provisions of the state constitution." In accordance with our long-standing practice, we respectfully

decline to answer this question because of its generality. *See Opinion of the Justices (Weirs Beach)*, 134 N.H. at 717, 598 A.2d at 867-68.

DAVID A. BROCK
JOHN T. BRODERICK, JR.
JOSEPH P. NADEAU
LINDA S. DALIANIS
JAMES E. DUGGAN

January 19, 2001

*Devine, Millimet & Branch, P.A.*, of Manchester (*David H. Barnes & a.* on the memorandum), filed a memorandum on behalf of Oyster River Cooperative School District, Exeter Region Cooperative School District, John Stark Regional School District, Contoocook Valley School District, and Winchester School District in support of negative answers to the questions.

*Philip T. McLauglin*, attorney general (*Anne M. Edwards*, assistant attorney general), joined in the memorandum of Oyster River Cooperative School District & a.

*Edward N. Damon*, senate legal counsel, filed a memorandum on behalf of Senator Caroline McCarley and Senator Rick A. Trombly in support of negative answers to the questions.

*Shaines & McEachern, P.A.*, of Portsmouth (*Paul McEachern* on the memorandum), filed a memorandum on behalf of Richard McGraw in support of the court declining to answer question 3.

*New Hampshire Municipal Association*, of Concord (*H. Bernard Waugh, Jr.* on the memorandum), filed a memorandum in support of negative answers to the questions.

*Jane Johnson*, of Weare, filed a memorandum in support of negative answers to the questions.

*Bill and Linda Ramsey*, of Henniker, filed a memorandum in support of negative answers to the questions.

*Sue Drake*, of Weare, filed a memorandum in support of negative answers to the questions.

*Bob Costa*, of Henniker, filed a memorandum in support of negative answers to the questions.

*John Stark Regional School District School Board*, of Henniker, filed a memorandum in support of negative answers to the questions.

## APPENDIX

The following request of the senate for an opinion of the justices was adopted on March 9, 2000, and filed with the supreme court on March 13, 2000:

"Whereas, there is presently pending in the Senate, SB 365-LOCAL, 'An Act relative to the adoption of bonds or notes in certain school districts and municipalities'; and

"Whereas, there has been proposed to SB 365-LOCAL an amendment (document number 2000-3618s) which would generally reduce the voting majority required to authorize the issuance of bonds or notes in cities, towns, school districts, and village districts from ⅔ to ⅗; and

"Whereas, SB 365-LOCAL with the proposed amendment does not provide for a local referendum accepting or declining the reduction in the voting majority; and

"Whereas, questions have arisen concerning the constitutionality of SB 365-LOCAL with the proposed amendment; and

"Whereas, it is important that the questions of the constitutionality of SB 365-LOCAL with the proposed amendment should be settled in the near future, and in any event before final passage by the senate; now therefore, be it

"Resolved by the senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of law:

1. If SB 365-LOCAL with the proposed amendment is enacted, would it in any way violate the provisions of the first sentence of Part I, Article 39 of the New Hampshire Constitution, specifying that no law changing the charter or form of government of a particular city or town shall be enacted by the legislature except to become effective upon the approval of the voters in a local referendum provided for in the law?

2. If SB 365-LOCAL with the proposed amendment is enacted, would it in any way violate the provisions of the second sentence of Part I, Article 39 of the New Hampshire Constitution, specifying that general laws authorizing cities and towns to adopt or amend their charters or forms of government shall become effective only upon the approval of the voters in a local referendum?

3. If under SB 365-LOCAL with the proposed amendment the majority voting requirements would differ between local political subdivisions with and without the optional voting procedures under RSA 40:13, will this result in the infringement of any person's rights under the equal protection, voting, or due process protections of the state or federal constitutions?

4. Do any other aspects of SB 365-LOCAL with the proposed amendment violate or conflict with any provisions of the state constitution?"