Rockingham
No. 00-261

RICHARD MCGRAW

v.

EXETER REGION COOPERATIVE SCHOOL DISTRICT & a.

January 19, 2001

*Shaines & McEachern, P. A.*, of Portsmouth (*Paul McEachern* on the brief and orally), for the plaintiff.

*Devine, Millimet & Branch, Professional Association*, of Manchester (*David H. Barnes & a.* on the brief, and *Mr. Barnes* orally), for the defendant and the intervenors.

*H. Bernard Waugh, Jr.*, of Concord, by brief for the New Hampshire Municipal Association, as *amicus curiae*.

BRODERICK, J. This interlocutory transfer without ruling from the Superior Court (*Murphy*, J.) questions the constitutionality of the 1999 amendment to RSA 33:8, *see* Laws 1999, ch. 134. The statute governs the voting requirements municipalities and school districts must meet to issue bonds and notes. The sole question transferred is whether the 1999 amendment, as applied to the Exeter Region Cooperative School District, violates either Part I, Article 39 or the equal protection provision of Part I, Article 12 of the New Hampshire Constitution. We respond in the negative.

"We accept the statement of the case presented in the interlocutory transfer." *Trovato v. Deveau*, 143 N.H. 523, 524, 736 A.2d 1212,

1213 (1999). The plaintiff, Richard McGraw, is a resident of Exeter and entitled to vote at the annual meeting of the Exeter Region Cooperative. School District (district). In 1997, the voters of the district adopted RSA 40:13, which provided, in part, that the district use the official ballot for voting on all issues and that a simple majority was sufficient to approve warrant articles unless a two-thirds vote was mandated by law, contract, or written agreement. RSA 40:13, I, XIII (Supp. 1998). At that time, RSA 33:8 required a two-thirds vote to authorize a district to issue bonds. RSA 33:8 (Supp. 1991). In 1999, RSA 33:8 was amended to lower the supermajority voting requirement to three-fifths. In districts and municipalities which had not adopted official ballot voting procedures, however, the amendment to RSA 33:8 did not apply and the issuance of bonds continued to require a two-thirds vote. RSA 33:8 (2000).

Subsequent to the effective date of the 1999 amendment, the district voters approved a bond issue for the renovation of the Exeter High School by a 60.8% majority. The plaintiff filed a declaratory judgment action, alleging the unconstitutionality of RSA 33:8 as amended. Thereafter, Oyster River Cooperative School District, John Stark Regional School District, Contoocook Valley School District, and Winchester School District, each of which had approved a bond issue for school construction or renovation by a supermajority vote greater than three-fifths, but less than two-thirds, moved to intervene. The superior court granted their motion and thereafter transferred the question presently before us. We refer to the district and the intervenors collectively as the defendants.

The plaintiff contends that RSA 33:8, as amended in 1999, violates: 1) Part I, Article 39 of the New Hampshire Constitution by changing the form of government in official ballot municipalities and school districts without a local referendum; and 2) the equal protection provision of Part I, Article 12 of the New Hampshire Constitution by making an impermissible distinction among voters. We disagree.

I

■ We reject the plaintiff's first contention and adopt the rationale in *Opinion of the Justices (Municipal Bonds)*, 145 N.H. 680, 682-83, 765 A.2d 706, 708-09 (2001), for the purposes of this case. Relying upon our reasoning there, we hold that a change in the supermajority voting requirement for all official ballot municipali-

ties and districts under the 1999 amendment did not alter the form of government in any "*particular* city, town, school district, or village district." *Id.* at 682, 765 A.2d at 708. Accordingly, the statute as amended does not violate Article I, Part 39 of the State Constitution.

## II

The plaintiff next argues that the 1999 amendment violates the equal protection provision of Part I, Article 12 of the State Constitution by reducing the required supermajority from two-thirds to three-fifths only for citizens who vote on bond issues by official ballot. Accordingly, he argues that the legislature, by lowering the threshold required to pass bond issues, has disadvantaged dissenting voters and devalued their votes, thereby impinging upon their fundamental right to vote and freedom of speech.

We note that the plaintiff, in his brief, also argues that the 1999 amendment violates the equal protection provisions of the U.S. Constitution. He did not, however, make this argument in his petition for declaratory judgment; nor was this question transferred by the superior court. Consequently, the question is not properly before us and we need not address it. *See* SUP. CT. R. 9(1)(c); *Brooks v. Padula*, 125 N.H. 668, 669-70, 485 A.2d 1032, 1033 (1984).

Part I, Article 12 states:

> Every member of the community has a right to be protected by it, in the enjoyment of his life, liberty, and property; he is therefore bound to contribute his share in the expense of such protection, and to yield his personal service when necessary. But no part of a man's property shall be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people. Nor are the inhabitants of this state controllable by any other laws than those which they, or their representative body have given their consent.

The equal protection provisions of the State Constitution are designed to ensure that State law treats groups of similarly situated citizens in the same manner. "The first question in an equal protection analysis is whether the State action in question treats similarly situated persons differently." *LeClair v. LeClair*, 137 N.H. 213, 222, 624 A.2d 1350, 1355 (1993) (quotation omitted). The plaintiff contends that all citizens who vote on bond issues are similarly situated and that RSA 33:8 treats them differently based

upon whether they live in an official ballot community or a town meeting community. The plaintiff's contention misses the mark, however, because the voters in such communities or school districts are not similarly situated. At a fundamental level, the manner in which citizens participate in their government in official ballot communities and town meeting communities differs significantly.

■ Registered voters in a town meeting community or school district must attend the town or district meeting to vote on warrant issues. Inconvenience or hardship which prevents citizens from attending the meeting affects their right to vote. The meeting provides a forum for public discussion and debate on the various warrant issues and is the focal point for voter education. Public discourse is dependant upon the attendees. The dynamics of the meeting and the ideas and comments discussed may vary widely from issue to issue.

Registered voters in an official ballot community or school district, on the other hand, are not required to vote at a meeting. Their ability to vote by secret ballot upon various issues is far less encumbered by personal inconvenience or hardship. Voters may vote at any time during the designated voting day, usually at a nearby polling place. Those not able to get to the polls may vote by absentee ballot and actual voting is shielded from the cauldron of public opinion. We decline to say that voters in communities or school districts operating under distinctly different forms of government are similarly situated. RSA 33:8, as amended, provides a different process for citizens voting under different forms of government; those voters are not similarly situated. Consequently, there is no equal protection violation. "If the persons are not similarly situated, no equal protection problem is involved." LeClair, 137 N.H. at 222, 624 A.2d at 1355 (quotation and ellipsis omitted).

We have previously upheld different treatment of voters based upon their residence in separate, geographic communities operating under different forms of government. "No decision of this Court has extended the 'one man, one vote' principle to individuals residing beyond the geographic confines of the governmental entity concerned, be it the State or its political subdivision." Chasan v. Village District of Eastman, 128 N.H. 807, 820-21, 523 A.2d 16, 25 (1986) (quotation omitted). Further, we have previously rejected the argument that a requirement for a two-thirds majority either classified persons according to their vote, "weighted" a vote in violation of the principle of "one man, one vote," or impaired an individual's fundamental right to vote. See Tiews v. School Dist., 111

N.H. 14, 15-19, 273 A.2d 680, 681-83 (1971). Similarly, we reject the argument that the difference between a two-thirds and three-fifths majority in different communities operating under different forms of government either establishes separate treatment for citizens based on their level of political participation and political views, or impinges on their fundamental rights of voting and freedom of speech.

*Remanded.*

BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.