Walker, et al. v. Exeter, et al.     CV-01-222-JM  08/15/01  P

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


George M. Walker, et al.

   v.                                          Civil No. 01-222-JM
                                              Opinion No. 2001 DNH 153
Exeter Region Cooperative
School District, et al.

## O R D E R

Plaintiffs in this action challenge the constitutionality of N.H. Rev. Stat. Ann. ("RSA") 33:8, as amended in 1999, which sets forth the percentage of votes required for a school district or municipality to issue bonds or notes.  Before me for consideration is the defendant school districts' Motion to Dismiss the plaintiffs' Petition for Declaratory Judgment, pursuant to Fed. R. Civ. P. 12(b)(6), and the plaintiffs' objection.

### Standard of Review

In evaluating the defendants' motion, the court must accept the factual allegations contained in the plaintiffs' Petition as true and draw all reasonable inferences in the plaintiffs' favor. See Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001); Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 93 (1st Cir. 2000).  "A Rule 12(b)(6) motion will be

granted only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff[s] to relief." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

Although the threshold for stating a claim under Rule 12(b)(6) may be low, it is real. Id. While I must construe all well-pleaded facts in the plaintiffs' favor, I need not accept any unsupported conclusions or interpretations of law. See Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001); Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).

Background

The following facts are taken from the plaintiffs' Petition. Each of the defendant school districts is a political subdivision of the State of New Hampshire. Each of the plaintiffs is an individual who resides within one of the defendant school districts and is entitled to vote at the school district's annual meeting. Prior to 1999, the voters in each of the defendant school districts adopted RSA 40:13, which changed the district's voting procedure from a town meeting procedure to an official ballot procedure. At the time, RSA 33:8 required a two-thirds vote to authorize a school district to issue bonds, whether that school district used the official ballot or the town meeting

2

method of voting.[1]

In 1999, however, the New Hampshire Legislature amended RSA 33:8 to lower the supermajority needed to issue bonds to three-fifths in those districts that had adopted the official ballot voting procedure. The amendment did not alter the two-thirds vote required to issue bonds in districts using the town meeting voting procedure.[2] The legislative history of the amendment reveals that the Legislature's purpose was to reduce the influence of voters opposing bond issues in official ballot districts where, the legislators believed, it had become more difficult to obtain bond issue approval.[3]

---

[1]In New Hampshire, school districts issue bonds in order to fund school construction and renovation. See McGraw v. Exeter Region Coop. Sch. Dist., 765 A.2d 710, 711 (N.H. 2001). The indebtedness on those bonds is paid for with property tax revenues raised from the respective community.

[2]RSA 33:8, as amended, provides in relevant part: "the issue of bonds or notes by any municipal corporation . . . except a school district or municipality which has adopted official ballot voting procedures pursuant to RSA 40:13 shall be authorized by a vote by ballot of 2/3 . . . . The issue of notes or bonds by a school district or municipality which has adopted official ballot voting procedures pursuant to RSA 40:13 shall be authorized by a vote of 3/5."

[3]The defendants argue that the New Hampshire Legislature had several reasons for amending RSA 33:8, which the plaintiffs did not describe in their Petition. For example, the defendants assert that the Legislature found that the official ballot procedure eliminated the concerns that had justified the need for

3

Subsequent to the effective date of the 1999 amendment, the voters in each of the defendant school districts voted to approve bond issues by a majority greater than three-fifths, but less than two-thirds. Each of the plaintiffs voted to oppose the bond issue in his or her respective school district.

## Discussion

The question raised by the defendants' motion to dismiss is whether the 1999 amendment to RSA 33:8 violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution. The plaintiffs claim that the amendment is unconstitutional because it impermissibly treats citizens who vote on bond issues in official ballot districts differently from citizens who vote on bond issues in town meeting communities. The defendants argue first that RSA 33:8 raises no equal protection concerns because voters residing in separate

---

a two-thirds vote on bond issues. In addition, according to the defendants, the Legislature found that the two-thirds voting requirement in official ballot districts magnified the influence of voters in the minority and enabled them to defeat the majority's efforts to approve bond issues. In support of their reading of the amendment's legislative purpose, the defendants attached a copy of the legislative history to their motion to dismiss. Because the legislative purpose for amending RSA 33:8 does not affect my ruling on the current motion, however, I decline to examine the Legislature's motives and I accept the plaintiffs' characterization of the legislative history for purposes of this opinion.

4

geographic units operating under different systems of local government are not similarly situated; and second, even if voters residing in different school districts were similarly situated, RSA 33:8 is rationally related to a legitimate government purpose and survives equal protection scrutiny.

The defendants' first argument is dispositive. "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.' This provision creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997)(citations omitted). Significantly for this case, equal protection "relates to equality between persons as such rather than between areas . . . 'It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances'." Salsburg v. Maryland, 346 U.S. 545, 551(1954)(quoting Missouri v. Lewis, 101 U.S. 22, 31 (1879)). Accord Griffin v. County Sch. Bd. of Prince Edward County, 377 U.S. 218, 230 (1964); Walsh v. Massachusetts, 618 F.2d 156, 158 (1st Cir. 1980). Thus, uniformity among a state's

5

local subdivisions is not a constitutional requisite, and it is not a violation of the Equal Protection Clause for New Hampshire to impose different voting requirements for bond issues upon different school districts using different voting procedures. See Holt Civic Club v. Tuscaloosa, 439 U.S. 60, 68-9 (1978); McGowan v. Maryland, 366 U.S. 420, 427 (1961); Salsburg, 346 U.S. at 552.[4]

I reject the plaintiffs' argument, based on the New Hampshire Supreme Court case of Claremont Sch. Dist. v. Governor, 142 N.H. 462 (1997), that funding for school construction and renovation is a statewide concern, and that the governmental entity at issue for equal protection purposes is not the school district, but the entire State of New Hampshire. Although the Claremont court declared that the taxing district is the State and not the local governmental unit for purposes of levying

_____

[4]The distinction that RSA 33:8 makes between voters in different communities using different forms of government is minor compared to the discrepancies created by other statutes that have withstood equal protection scrutiny. See e.g., Holt Civic Club v. Tuscaloosa, 439 U.S. 60 (1978)(upholding constitutionality of statutes authorizing city's exercise of police powers over neighboring town without concomitant extension of the right to vote in city elections). Even as amended, RSA 33:8 preserves the disproportionate power that voters in the minority have consistently enjoyed over those in the majority.

property taxes used to fund public education, the case was decided under the proportionality clause of the New Hampshire Constitution and involved neither state nor federal equal protection claims. Moreover, in McGraw v. Exeter Region Coop. Sch. Dist., 765 A.2d 710 (N.H. 2001), the New Hampshire Supreme Court declined to apply the reasoning of Claremont to the equal protection context.[5] Instead, the McGraw court ruled that voters living in official ballot communities and voters living in town meeting communities are not similarly situated for purposes of the New Hampshire Constitution's equal protection provisions, and specifically rejected the argument that RSA 33:8 violates the equal protection guarantees of the State Constitution. See McGraw, 765 A.2d at 712-13. I find no logical basis for the plaintiffs' proposal that this court extend Claremont to this

---

[5]I do agree with the plaintiffs that a logical extension of Claremont would render the funding of public school buildings in New Hampshire a statewide concern. In ruling that the taxing district is the State, the Claremont court did not specifically distinguish between property taxes levied to fund public school operations and monies raised to fund school facilities. Furthermore, the Claremont court found that the New Hampshire Constitution compels the State to provide public school students an adequate education, and it is difficult to conceive that a constitutional right to an adequate education does not encompass the right to receive that education in minimally adequate facilities. Nonetheless, neither federal nor New Hampshire equal protection law supports the plaintiffs' position.

7

case, but reject <u>McGraw</u>.  Neither case analyzed the right to equal protection under the United States Constitution, but <u>McGraw</u> at least involved the same equal protection analysis under the New Hampshire Constitution that this court must engage in under federal law.  Even if this court looked to the New Hampshire Supreme Court's analysis of State constitutional law for guidance, therefore, the court still would find for the defendants.[6]

---

[6]I reject the plaintiffs' suggestion that the sweeping language used by the United States Supreme Court in <u>Bush v. Gore</u>, 531 U.S. 98 (2000) supports an equal protection claim against the defendants in this action.  The Supreme Court was cautious to limit its ruling in that case to the circumstances before it, which involved a statewide election for the President of the United States.  <u>See</u> <u>id.</u> at 109 ("Our consideration is limited to the present circumstances . . . .").  Therefore, its applicability to this or any other case involving concerns over voting rights and equal protection is dubious.  In addition, numerous commentators and law professors have criticized the decision for its usurpation of state court power and its unjustifiable expansion of the Equal Protection Clause.  <u>See</u> e.g., Erwin Chemerinsky, <u>Bush v. Gore Was Not Justiciable</u>, 76 Notre Dame L. Rev. 1093 (2001)(arguing that (1) Bush lacked standing to assert his equal protection claims, (2) the case was not ripe for review, (3) the Court should have allowed the Florida Supreme Court to interpret Florida law, and (4) the Court should have abstained because the case involved a political question); David A. Strauss, <u>Bush v. Gore: What Were They Thinking?</u>, 68 U. Chi. L. Rev. 737 (2001)(criticizing the Court's decision to intervene and describing the Court's ruling on equal protection as "very adventuresome" and "novel"); Cass R. Sunstein, <u>Order Without Law</u>, 68 U. Chi. L. Rev. 757 (2001)(criticizing the Court's reasoning as "embarrassingly weak" and noting that its equal protection holding lacked any basis in

8

<u>Conclusion</u>

The plaintiffs have failed to state an equal protection claim under the United States Constitution. Accordingly, the defendant school districts' Motion to Dismiss (document no. 4) is granted. The Clerk is directed to enter judgment consistent with this Order.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:    August 15, 2001

cc:     Paul McEachern, Esq.
        David H. Barnes, Esq.

---

history or in precedent). Whether the court was in fact guided more by personal preferences than by sound legal principles need not be addressed since the court has expressly indicated its intent to severely limit the case and the expert analysts suggest that the case has little or no value as precedent in the equal protection area.